### In re PARAMOUNT PUBLIX CORPORATION.

### KUHN, LOEB & CO. v. PARAMOUNT PUBLIX CORPORATION et al.

### No. 334.

Circuit Court of Appeals, Second Circuit.

May 4, 1936.

Cravath, De Gersdorff, Swaine & Wood, of New York City (Robert T. Swaine and Wm. D. Whitney, both of New York City, of counsel), for appellants.

Simpson, Thacher & Bartlett, of New York City (Thomas D. Thacher, Edwin L. Weisl, and Richard Jones, III, all of New York City, of counsel), for appellee Paramount Pictures, Inc.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

The order appealed from denied appellant's petition for compensation and expenses incurred in assisting in the reorganization of the debtor under section 77B of the Bankruptcy Act (11 U.S.C.A. § 207). Paramount Publix Corporation was a large holding company with interests in over five hundred other corporations engaged in some phase of the motion picture industry. Its consolidated balance sheet a year before its difficulties showed assets of about $300,000,000. In January of 1933 it was forced into equity receivership. On April 14, 1933, trustees in bankruptcy replaced the equity receivers. On June 7, 1934, section 77B of the Bankruptcy Act became effective, and on the next day a petition was filed by creditors for a reorganization of the debtor under that sec-

tion. A plan was submitted by the debtor December 3, 1934, and later approved, and as of July 1, 1935, the property was turned over to the debtor, then known as Paramount Pictures, Inc.

Kuhn, Loeb & Co. has marketed almost a hundred millions in Paramount's securities, and, as the house of issue, it was instrumental in the formation of protective committees for these issues. In 1933 it began the preparation of a comprehensive detailed report of the company's finances to supply the basic data necessary for any reorganization. Some of the debtor's securities had been bought by Kuhn, Loeb & Co. but these were sold out when it was requested to prepare a plan of reorganization by the committees representing the debenture holders and the bank creditors in March and April of 1934. Letters setting forth the arrangements between these parties were exchanged at this time, and it was agreed that, if the plan prepared by appellants was not acceptable, the committees would reimburse them for their expenses and disbursements up to $75,000. It was the understanding of all the parties that, if the plan were adopted, the estate would bear its cost. No formal designation of appellants as agents was made at this time, which, it is to be noted, was before the enactment of section 77B.

Preliminary drafts of the financial report Kuhn, Loeb & Co. was preparing were transmitted to the committees for the debenture holders, the bank creditors, and the stockholders in June and July of 1934. With this as a basis, they commenced and continued the preparation of a plan. Numerous conferences were held with the different representative groups, but the principal responsibility for the construction and drafting of the plan fell upon appellants and their counsel, who drew 30 separate progressive printed proofs.

In November of 1934, Kuhn, Loeb & Co. withdrew from the reorganization as suits against its members were contemplated. The plan was substantially complete at that time. The points of difference remaining were noted and posed for settlement. On December 3, 1934, the stockholders of the debtor adopted this Kuhn Loeb plan, and it was submitted for the court's approval. Although it was somewhat modified, it is this plan which the court finally approved. Appellants have paid bills of $14,287.29 for the successive printings of the plan and the financial report they prepared. They have been denied reimbursement for this.

We think that in the performance of this service the appellants were agents for the principal creditor committees and are entitled to reasonable compensation for the work and for their disbursements by virtue of section 77B (c) (9), 11 U.S.C.A. § 207 (c) (9). This section provides that the judge may allow "reasonable compensation for the services rendered and reimbursement for the actual and necessary expenses incurred in connection with the proceeding and the plan by officers, parties in interest, depositaries, reorganization managers and committees or other representatives of creditors or stockholders, and the attorneys or agents of any of the foregoing and of the debtor."

After the passage of this act, the debenture bond committee and the bank committee had continued the delegation to appellant of the task of preparing, as expeditiously as possible, a plan of reorganization of the Paramount Publix Corporation to be submitted to them for consideration. Both committees further undertook in writing to request the trustees of the debtor to make available to appellant as representatives of the creditor groups, all information helpful to the preparation of the plan.

The statute expressly provides that the court may compensate agents or attorneys of committees. While the statute broadly empowers the court to grant compensation, it must appear that the work of the agents or attorneys was beneficial to the estate in reorganization. The appellant's work was accepted at their retirement in November, 1934, and it was the plan which the debtor adopted and submitted for approval by the court. The court accepted this plan with some slight modifications, and the estate has had the benefit flowing from it. That the appellants expected compensation, and rightly so, is supported by an application made by the bankers' group and other creditor committees, for an allowance to them. The affidavits in support of their application show the respective committees delegated this important function to the appellant as agent, within section 77B (c) (9), and no affidavit contradicts.

The court below found that appellants made factual studies and surveys of the companies' condition and with their attorneys participated actively in the preparation and negotiation of the proposed

plan of reorganization; that in the early stages of these negotiations they were in effect reorganization managers, and, "if the situation had remained as it then was, they undoubtedly would have appeared in that capacity in the reorganization proceedings and have qualified for an allowance under the terms of the statute."

As a result of the reorganization, the business has been turned back to the reorganized company with the properties intact and well integrated with fixed charges greatly reduced and on a sound financial basis and with its good will unimpaired. The court stated: "This is an achievement for which those who have been in a position of responsibility both in the administration of the estate and the reorganization of the company are entitled to substantial recognition."

For this work we think the appellants should be allowed $25,000 and their just disbursements of $14,287.29.

Order reversed.