WOLF ET AL. *v.* WEINSTEIN ET AL.

No. 70. Argued February 20, 1963.—Decided April 15, 1963.

*Melvin Lloyd Robbins* argued the cause and filed briefs for petitioners.

*Alex L. Rosen* argued the cause and filed a brief for respondent Nazareth Fairgrounds & Farmers' Market, Inc. With him on the brief was *Marvin N. Rosen*. *Harold Harper* argued the cause and filed a brief for respondent Jerome Fried. With him on the brief was *Vincent P. Uihlein*. On the briefs for other respondents were *Arnold A. Weinstein, pro se,* and *Hyman L. Rutman* for William McK. Shongut.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

This case concerns two orders of the District Court for the Southern District of New York made in a proceed-

ing for the reorganization of respondent corporation, Nazareth Fairgrounds and Farmers' Market, Inc. (the Debtor), under Chapter X of the Bankruptcy Act, 11 U. S. C. §§ 501–676. One order determined a controversy over the rights of numerous claimants to stock interests in the Debtor. The other order—predicated on findings that respondent Weinstein, President of the Debtor, and respondent Fried, the Debtor's General Manager, had traded in the Debtor's stock during the proceeding in violation of § 249 of the Bankruptcy Act, 11 U. S. C. § 649 [1]—directed that Weinstein have nothing further to do with the operation of the Debtor's business, that Fried be discharged as General Manager and that the compensation of both be terminated forthwith. Neither respondent was, however, directed to return the compensation he had received before the date of the order. The Court of Appeals for the Second Circuit, in separate opinions, reversed both orders. We granted certiorari, 369 U. S. 837.

We decide only the issues presented by the Court of Appeals' reversal of the District Court's order applying § 249 to Weinstein and Fried, adjudicated *sub nom. In re Nazareth Fairgrounds & Farmers' Market, Inc., Debtor,*

---

[1] 11 U. S. C. § 649:

"Any persons seeking compensation for services rendered or reimbursement for costs and expenses incurred in a proceeding under this chapter shall file with the court a statement under oath showing the claims against, or stock .of, the debtor, if any, in which a beneficial interest, direct or indirect, has been acquired or transferred by him or for his account, after the commencement of such proceeding. No compensation or reimbursement shall be allowed to any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity, who at any time after assuming to act in such capacity has purchased or sold such claims or stock, or by whom or for whose account such claims or stock have, without the prior consent or subsequent approval of the judge, been otherwise acquired or transferred." This provision was added by the Chandler Act of June 22, 1938, c. 575, 52 Stat. 901.

296 F. 2d 678.   Decision of those issues, which involve
the reach of § 249, is important in the administration
of the Bankruptcy Act.   But our consideration of the
issues underlying the order of the District Court reversed
*sub nom. Fried* v. *Margolis,* 296 F. 2d 670, persuades us
that the grant of certiorari to review these issues was im-
provident.   Oral argument brought into sharper focus
than was apparent at the time we granted the writ that
the controversy over the stock interests primarily impli-
cates questions of Pennsylvania law and presents no fed-
eral question of substance.   In the circumstances, the writ
of certiorari as to that judgment of the Court of Appeals
is dismissed as improvidently granted.   Cf. *The Monrosa*
v. *Carbon Black, Inc.,* 359 U. S. 180, 183–184.

The pertinent provisions of § 249 disallow compensa-
tion or reimbursement to any person "acting in the pro-
ceedings in a representative or fiduciary capacity, who at
any time after assuming to act in such capacity has pur-
chased or sold . . . stock [of the Debtor] . . . without the
prior consent or subsequent approval of the judge . . . ."
Both Weinstein and Fried traded in the Debtor's stock
while serving respectively as President and General Man-
ager.[2]   Both held their positions with the approval of

---

[2] The petition on which the District Court's order was based
alleged that in 1958 and 1959 Weinstein (who was still a director and
officer of the Debtor) had purchased three shares and sold a fraction
of one, and that in 1959 he or persons represented by him had
exercised options to purchase six shares.   It was further alleged that
Fried had bought 20 shares in 1957, of which he had resold 10 shares
in 1958.   Although conceding that he had bought and sold securities
of the Debtor, Weinstein insisted before the District Court that
he was unaware of the existence of § 249, and had bought the
stock only to keep the corporation out of the control of "raiders,"
and not for personal profit.   Fried also admitted the alleged transac-
tions, but maintained that he had been motivated neither by inside
information nor by any improper motive to use his corporate position
to enhance his trading.

the District Court which, after permitting the Debtor to remain in possession pursuant to § 156, 11 U. S. C. § 556, authorized Weinstein to continue to serve as President and Fried to continue as General Manager. The court also approved salaries for each.[3] Fried has actively managed the business, the principal asset of which is a farmers' market located in Eastern Pennsylvania. Weinstein, a New York attorney, has acted primarily in a consultative or advisory capacity. The Debtor's business has prospered under their management despite considerable friction and dissension between factions contending for stock and managerial control.

The District Court, after hearings upon the nature and extent of Weinstein's and Fried's duties and activities, concluded that each was a "fiduciary" within the meaning of § 249.[4] The District Court thereupon ordered that

---

[3] At the time of filing of the petition, Weinstein was both a director of the Debtor and its President. Fried had previously been a director and Secretary-Treasurer, but resigned those posts before the filing of the petition, and continued to hold only the position of General Manager, apparently not an office provided for in the corporation's charter. The court originally authorized payment of a salary of $100 weekly to Fried, and nothing to Weinstein. Later Fried's salary was increased to $150 and eventually to $200 weekly, while provision was made for payment of $50 weekly to Weinstein. The District Court's orders with respect to Weinstein were apparently made pursuant to § 191 of the Act, 11 U. S. C. § 591, which permits a debtor in possession to "employ officers of the debtor at rates of compensation to be approved by the court." Since Fried was not an officer of the Debtor, but merely a salaried employee, explicit judicial approval of his continued employment and salary may not have been required. Cf. *In re Wil-low Cafeterias*, 111 F. 2d 429, 431.

[4] Since Weinstein was both an officer and a director of the Debtor and had conceded on cross-examination that he was a "fiduciary," no further inquiry concerning his corporate function was necessary, although the District Court did probe the nature and extent of his services. The court did, however, examine Fried at some length

their compensation be terminated, that Fried be discharged as General Manager, and that Weinstein, whose removal as President the court believed was beyond its powers, have nothing further to do with the management of the business.[5] The Court of Appeals reversed the order in its entirety on the ground that § 249 applied to neither Weinstein nor Fried. The Court of Appeals indicated that "doubtless" a literal reading of the statute's terms would include both, but held that § 249 was to be construed as applicable not to every "person acting in the proceedings in a representative or fiduciary capacity" but only to such persons in the particular capacities named in §§ 241, 242 and 243, 11 U. S. C. §§ 641, 642 and 643—petitioning creditors, court officers and their attorneys, indenture trustees, depositaries, reorganization managers, committees, creditors and stockholders, or their representatives, and the attorneys for

concerning the nature of his powers and responsibilities in the management of the Debtor's business, and concluded:

". . . you were substantially more than a mere employee. You were no cop in the parking lot. You ran the business while Mr. Weinstein wasn't there. As you admitted, you operated the business and managed the property of the debtor. The fact that you consulted and got approval from the directors does not diminish your status in the structure of the debtor. You were the managing agent."

[5] The District Court held that § 189 of the Bankruptcy Act, 11 U. S. C. § 589, authorizing the court to supervise the operations of a debtor in possession, supported the order entered at the close of the hearings that "Jerome Fried will be discharged from the debtor's employ at once." The order as to Weinstein was that he "shall have nothing further to do with the operation of [the Debtor's] . . . business and affairs, and management of its property." The court acknowledged that consistency would have dictated the removal of Weinstein from office, "[b]ut I don't have that power." The District Court ordered further that neither Fried nor Weinstein should serve, even if willing to do so, without compensation. The Court of Appeals stayed this provision of the order pending decision of the appeal.

them or for "other parties in interest"—who under § 247 are entitled to a hearing upon applications for allowances after notice to certain interested groups and individuals. 296 F. 2d, at 682–683. In reversing the District Court on this ground the Court of Appeals found no occasion to consider the question whether in addition to denial of compensation removal from office was authorized or required where § 249 was applicable, since in its view "the order of removal cannot survive the fall of its under-pinning." 296 F. 2d, at 683.

We disagree with the Court of Appeals. We hold that persons performing fiduciary functions such as those which the District Court found Weinstein and Fried had performed are subject to § 249.

## I.

The virtual immunity which active participants in corporate reorganizations enjoyed from judicial superin-tendence of abuses in the payment of compensation and allowances was one of the principal reasons for the enact-ment of § 77B of the Bankruptcy Act in 1934.[6] "There was the spectacle of fiduciaries fixing the worth of their own services and exacting fees which often had no relation to the value of services rendered," *Leiman* v. *Guttman,* 336 U. S. 1, 7. Section 77B, among other significant re-forms, created important new judicial powers to regulate

---

[6] See, *e. g.,* S. Doc. No. 268, 74th Cong., 2d Sess. 59–63, which details certain abuses with respect to fees and allowances antedating the adoption of § 77B. See also Securities and Exchange Comm'n, Report on the Study and Investigation of the Work, Activities, Per-sonnel and Functions of Protective and Reorganization Committees, pt. II, 348–373; pt. VIII, 221–231. Further background material is given in 6 Collier, Bankruptcy (14th ed. 1947), ¶ 13.18; Bandler, Securities Trading and Fee Sharing Under Chapter X of the Bank-ruptcy Act, 15 Record of the Assn. of the Bar of the City of New York 230–234 (1960).

the payment of compensation and the reimbursement of expenses. See *Dickinson Industrial Site, Inc.,* v. *Cowan,* 309 U. S. 382, 388–389. Passage of the Chandler Act four years later measurably strengthened these powers of judicial superintendence, particularly with respect to corporate reorganizations, through the new provisions of c. X, 11 U. S. C. §§ 501–676, see *Brown* v. *Gerdes,* 321 U. S. 178, 181–182. In curbing the pre-statutory abuses the general provisions of § 77B had proved inadequate.[7] Chapter X sought also to broaden the participation of interested groups in the reorganization by ensuring compensation to several classes which theretofore often served the estate as volunteers.[8]

---

[7] There is much evidence that abuses of this kind survived the enactment of § 77B. See H. R. Rep. No. 1409, 75th Cong., 1st Sess. 37–38 (quoting statement of Commissioner William O. Douglas); Teton, Reorganization Revised, 48 Yale L. J. 573, 591–592, 605 (1939); Developments in the Law—Reorganization Under Section 77B of the Bankruptcy Act—1934–1936, 49 Harv. L. Rev. 1111, 1201–1202 (1936); Medill, Fees and Expenses in a Corporate Reorganization Under Section 77B, 34 Mich. L. Rev. 331, 363–364 (1936). For this and other reasons, the Chandler Act established a comprehensive and exclusive system of allowances for services and expenses in a reorganization, which precludes the granting of allowances not therein provided for. See *Brown* v. *Gerdes, supra; Lane* v. *Haytian Corp.,* 117 F. 2d 216, 219.

[8] Under the very general compensation and allowance provisions of § 77B, for example, courts were uncertain whether remuneration could be provided to stockholders who took an active part in and made valuable contributions to the reorganization. Thus the courts had divided as to the availability of compensation or reimbursement to this and other interested classes of participants. See, *e. g.,* 6 Collier, Bankruptcy (14th ed. 1947), ¶ 13.01. Specific provisions of Chapter X sought to resolve these ambiguities by enumerating with some precision the participants to whom allowances were available, §§ 241–243, 11 U. S. C. §§ 641–643, and the procedure by which application for allowances must be made, § 247, 11 U. S. C. § 647. See Steinberg, Salient Features in Awarding Allowances in Corporate Reorganization

No statutory sanction against trading in the Debtor's securities during a reorganization was provided before the Chandler Act. However, § 77B's broad mandate that fees and allowances must be "reasonable" to merit judicial approval had been held sufficient authority by two federal courts to sanction denial of compensation to persons holding fiduciary positions in reorganization proceedings who had traded in the Debtor's stock. *In re Paramount-Publix Corp.*, 12 F. Supp. 823, 828, rev'd in part, 83 F. 2d 406; *In re Republic Gas Corp.*, 35 F. Supp. 300. These decisions found even in the general terms of the statute the embodiment of "ancient equity rules governing the conduct of trustees, including deprivation of compensation where there is a departure from those rules." 35 F. Supp., at 305.

The relevant legislative materials leave no doubt that the purpose behind § 249 was to codify the rule of these decisions and to give pervasive effect in Chapter X proceedings to the historic maxim of equity that a fiduciary may not receive compensation for services tainted by disloyalty or conflict of interest.[9] Cf. *Michoud* v. *Girod,*

---

Proceedings and the Role of the Securities and Exchange Commission in Their Final Determination, 8 N. Y. L. Forum 253, 266 (1962); Gerdes, Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act, 52 Harv. L. Rev. 1, 36–37 (1938).

[9] To the effect that the draftsmen of § 249 intended to codify, and also to broaden the scope of, the *Paramount-Publix* and *Republic Gas* rule, see Hearings on H. R. 6439, before the House Committee on the Judiciary, 75th Cong., 1st Sess. 184 (statement of Commissioner William O. Douglas: "We visualized a lot of administrative difficulties in determining in a particular case whether or not actual inside information was used, and so we decided that the best practical way of doing it was to broaden the base a little bit and establish a rule of thumb and follow the pattern of the *Paramount case* and the *Republic Gas case*"). See also Douglas, Improvement in Federal Procedure for Corporate Reorganizations, 24 A. B. A. J. 875, 877 (1938);

4 How. 503, 556–560; *Weil* v. *Neary*, 278 U. S. 160; *Magruder* v. *Drury*, 235 U. S. 106, 119–120. Indeed, we have several times declared that the general statutory authorization in the Bankruptcy Act for "reasonable" compensation for services "necessarily implies loyal and disinterested service in the interest of those for whom the claimant purported to act." *Woods* v. *City Nat. Bank & Trust Co.,* 312 U. S. 262, 268; see also *American United Mutual Life Ins. Co.* v. *Avon Park,* 311 U. S. 138.

Access to inside information or strategic position in a corporate reorganization renders the temptation to profit by trading in the Debtor's stock particularly pernicious. The particular dangers may take two forms: On the one hand, an insider is in a position to conceal from other stockholders vital information concerning the Debtor's financial condition or prospects, which may affect the value of its securities, until after he has reaped a private profit from the use of that information. On the other hand, one who exercises control over a reorganization holds a post which might tempt him to affect or influence corporate policies—even the shaping of the very plan of reorganization—for the benefit of his own security hold-ings but to the detriment of the Debtor's interests and those of its creditors and other interested groups.[10]

---

Brudney, Insider Securities Dealings During Corporate Crises, 61 Mich. L. Rev. 1, 6–10 (1962).

The Chandler Act contained another provision which, although less explicit, was in the same vein. Section 221 (4), 11 U. S. C. § 621 (4), provides that the court shall confirm a plan of reorganization if, *inter alia,* all payments made or promised by the debtor for services and expenses in connection with the reorganization are "reasonable or, if to be fixed after confirmation of the plan, will be subject to the approval of the judge . . . ." This provision was carried over in substance from more general provisions of § 77B, as a companion to the new and more specific provisions of § 249.

[10] Several courts have suggested that a paramount objective of § 249 was to check the misuse for private gain of inside information

Congress enacted two distinct types of sanctions to prevent these possible practices. One appears in § 16 (b) of the Securities Exchange Act, 15 U. S. C. § 78p (b), which prohibits the realization by insiders of short-swing profits from trading in their corporation's stock, even when the corporation is solvent. Cf. *Blau* v. *Lehman*, 368 U. S. 403. The other sanction, directed at preventing insider trading during insolvency or reorganization, appears in § 249; it denies to a "fiduciary" or "representative" any compensation or reimbursement if at any time during the proceeding he trades in the Debtor's stock. The two provisions are cumulative, not alternative.[11]

In the light of its clearly revealed objectives, no congressional purpose to exclude from § 249 insiders such as Weinstein and Fried—who are, as the District Court found, no less fiduciaries of the Debtor than committee members, trustees or attorneys—can be perceived. Certainly the possibilities for abuse of their access to inside information and its clandestine use for personal profit are

---

or control, to which the position of a representative or fiduciary gives him access. See, *e. g., Otis & Co.* v. *Insurance Bldg. Corp.,* 110 F. 2d 333, 335; *Finn* v. *Childs Co.,* 181 F. 2d 431, 441. See generally Steinberg, *supra,* note 8, at 265; Ferber, Blasberg and Katz, Conflicts of Interest in Reorganization Proceedings Under the Public Utility Holding Company Act of 1935 and Chapter X of the Bankruptcy Act, 28 Geo. Wash. L. Rev. 319, 365–379 (1959); Note, Conflict of Interests as a Factor in the Allowance of Representatives' Claims in Insolvent Corporate Reorganizations, 106 U. of Pa. L. Rev. 1139, 1160–1161 (1958); 63 Harv. L. Rev. 1057–1058 (1950).

[11] The common origins and parallel purposes of § 249 and § 16 (b) of the Securities Exchange Act have been outlined in 2 Loss, Securities Regulation (2d ed. 1961), 1124–1125. See also Brudney, *supra,* note 9, at 8–10. For analysis of the particular policies underlying § 16 (b) which require a similarly pervasive and unbending rule against certain forms of insider trading, see, *e. g., Adler* v. *Klawans,* 267 F. 2d 840, 844; Cook and Feldman, Insider Trading Under the Securities Exchange Act, 66 Harv. L. Rev. 612, 622–623 (1953).

no less.[12]    Thus throughout the context of corporate reorganization and bankruptcy, the decisions of this and other courts have recognized no substantial distinction between directors, for example, and officers or managing employees with respect to the obligation of loyal and disinterested service.    "Since the officers and directors occupy fiduciary positions during this [reorganization] period, their actions are to be held to a higher standard than that imposed upon the general investing public." *Securities & Exchange Comm'n* v. *Chenery Corp.,* 332 U. S. 194, 208. See also *Pepper* v. *Litton,* 308 U. S. 295, 306; *In re Los Angeles Lumber Prods. Co.,* 37 F. Supp. 708.

The policies underlying Chapter X and § 249 itself suggest two further reasons for not recognizing such a distinction.    First, if the class of "fiduciaries" or "representatives" whose trading is regulated by § 249 was meant

---

[12] Several courts have said that officers, like directors, are to be held to a fiduciary standard during insolvency or reorganization which might bring them within the prohibitions of § 249.    *E. g., Gochenour* v. *Cleveland Terminals Bldg. Co.,* 118 F. 2d 89; *In re Jersey Materials Co.,* 50 F. Supp. 428; *In re Los Angeles Lumber Prods. Co.,* 46 F. Supp. 77, 89; cf. *In re Philadelphia & W. R. Co.,* 64 F. Supp. 738, 741.    See also Teton, *supra,* note 7, at 603; Brudney, *supra,* note 9, at 20; 6 Collier, Bankruptcy (14th ed. 1947), ¶ 13.18, at 4591–4592.

The dangers of insider trading or misuse of information or position are not thought to be as applicable to trading by officers and directors of a solvent corporation not under judicial superintendence.    Cf. *Manufacturers Trust Co.* v. *Becker,* 338 U. S. 304.    Although a director, at least, is held always to certain fiduciary obligations while trading in the shares of his corporation, see Conant, Duties of Disclosure of Corporate Insiders Who Purchase Shares, 46 Cornell L. Q. 53 (1960), it has been suggested that it may actually be economically desirable for officers and directors to acquire a proprietary interest in a solvent corporation.    See Berle and Means, The Modern Corporation and Private Property (1932), 122; Note, Fiduciary Duty of Officers and Directors Not to Compete With the Corporation, 54 Harv. L. Rev. 1191, 1196–1197 (1941).

to comprehend only reorganization committees, attorneys, trustees and the like, the enactment would have been superfluous in view of the fiduciary standard to which they were already bound under settled principles of equity. Even before the Chandler Act a committee member or dominant shareholder who profited from inside information during a reorganization was no more entitled to compensation for his services than the trustee of a private trust who compromised his loyalty. Cf. *Weil* v. *Neary, supra.* We have said that the inherent equity power of the bankruptcy court "embraces denial of compensation to those who have purchased or sold securities during or in contemplation of the proceedings." *American United Mutual Life Ins. Co.* v. *Avon Park, supra,* at 147. We can only conclude therefore that § 249 was meant to broaden the classes of fiduciaries to be subjected to this traditional sanction.

Second, to define "fiduciary" in § 249 as narrowly as has the Court of Appeals would invite a form of evasion and circumvention which could readily defeat the whole purpose of the statute's prophylactic rule. If only a director or corporate attorney were disqualified from trading during the reorganization, how easily a director-officer could avoid the ban by relinquishing his directorship while retaining his office and therefore his access to inside information. In other words, the mere shifting of titles could enable the very class at which the regulation was directed to avoid its prohibitions. Congress plainly did not indulge in an exercise in futility in enacting § 249.

In terms of the purposes and the underlying policies of § 249 there is therefore no justification for the Court of Appeals' construction exempting Weinstein and Fried. We turn now to the parsing of the provisions of the Bankruptcy Act by which the Court of Appeals reached its conclusion.

## II.

Article XIII of Chapter X, of which § 249 is a part, provides generally for matters of "compensation and allowances." Sections 241, 242 and 243 authorize the bankruptcy court to allow reimbursement and compensation to the persons specifically named in those sections.

The Court of Appeals concluded that the prohibitions of § 249 apply only to those persons named in §§ 241–243, who are required to apply to the court for compensation or reimbursement under § 247. The Court of Appeals reasoned from the location of § 249 within the article that only the "strangers" to the corporation mentioned in §§ 241, 242 and 243, whose services would not have been rendered but for the reorganization, and who could not therefore have been compensated without judicial approval, could be taken to be within § 249. The court buttressed this reading by reference to distinct and separate sections of the Act providing for the compensation of officers and employees.

Our reading of the same sections leads us to the contrary conclusion; in our view they support our broader reading of § 249. First, it is significant that the coverage of § 249 is defined in terms quite unlike those of the earlier sections of the article. While §§ 241–243 and § 247 detail with care the classes of persons to whom compensation is to be allowed and by whom application is to be made, § 249 speaks generally of "any committee or attorney, or other person acting in the proceedings in a representative or fiduciary capacity . . . ." Had the Congress meant the coverage of this section to be coextensive with that of its predecessors in the article, it would presumably either have referred expressly to the earlier sections as the guidelines for § 249, or would have enumerated the same groups again in

essentially the same terms. That the draftsmen of § 249 used neither readily available approach suggests that the superintendence of § 249 was meant to transcend the bounds of the article.

Further parsing of the statute reinforces this conclusion. There is, for example, no mention in §§ 241–243 or § 247 of the directors of the Debtor corporation. Yet there seems little doubt that directors, who are fiduciaries even of a solvent corporation and its shareholders, may be brought within the prohibitions of § 249 if they trade in the Debtor's stock. See *In re Los Angeles Lumber Prods. Co., supra,* at 711. On the other hand, it is not entirely correct to say that Article XIII authorizes allowances only for "strangers" whose services would neither have been rendered nor become compensable save for the reorganization. Both the indenture trustee and the attorney for the Debtor are, for example, expressly named as Article XIII applicants, required under § 247 to seek compensation, at least for services pursuant to the reorganization. Neither can properly be considered a "stranger" whose relationship to and services for the corporation arise solely out of the petition for reorganization.

We turn next to the argument that § 249 cannot have been intended to embrace officers and employees in light of certain provisions concerning their compensation in Article VIII. Section 191, for example, authorizes the Debtor in possession to "employ officers of the debtor at rates of compensation to be approved by the court." The suggestion is that once the court has approved a rate of compensation under that section, such approval must be taken to immunize the officer from the sanctions of § 249. We cannot accept that suggestion, for surely there are various forms of disloyalty or conflict of interest which would disentitle an officer to com-

pensation under general principles of equity and quite without regard to any statutory prohibition.[13]

The approval of an officer's rate of compensation does not confer an immunity from equitable sanctions, nor can it immunize him from § 249. Section 191 does no more than vest the court with additional authority to pass in advance upon the qualifications and the salary of an officer of the Debtor before he assumes or continues in office. There is no suggestion in that section or elsewhere that such approval was intended to diminish in any way the court's statutory powers over fees and allowances conferred broadly by the Chandler Act. That officers and other employees may receive their compensation on a weekly or monthly basis while other persons subject to § 249, such as attorneys and trustees, customarily serve without compensation until the conclusion of the proceeding, is a difference without legal significance in this context.[14] The application of § 249 turns not upon the

---

[13] See, e. g., In re Midland United Co., 159 F. 2d 340, 345–346. Thus, even where the prohibitions of § 249 are for one reason or another not applicable to a particular insider transaction during reorganization, bankruptcy courts have consistently recognized the existence of inherent equity power to disallow or at least to reduce claims for compensation or reimbursement. See In re Cosgrove-Meehan Coal Corp., 136 F. 2d 3, 6 (C. A. 3d Cir.); Chicago & West Towns Railways v. Friedman, 230 F. 2d 364 (C. A. 7th Cir.); Berner v. Equitable Office Bldg. Corp., 175 F. 2d 218 (C. A. 2d Cir.). See also 2 Loss, Securities Regulation (2d ed. 1961), 1124–1125; Note, 106 U. of Pa. L. Rev. 1139, 1155 (1958).

[14] Respondents have contended that subjecting a salaried employee to the provisions of § 249 would impose insuperable administrative problems, because the employee would be required to make application to the court at the end of each pay period before payment of his salary would be authorized. The contention would have merit only if officers and employees were also within the class of applicants to whom the requirements of § 247 apply; but such a result is not, for reasons already discussed, inevitable. Indeed, the salary of a nonofficer employee need not even be approved in advance of his

manner in which, or the time at which, payment is made, but rather upon the nature of the services and responsibilities which are being compensated.

Consideration of the function and responsibility of the officers of a Debtor corporation left in possession also supports our construction. The concept of leaving the Debtor in possession, as a "receivership without a receiver," [15] was designed to obviate the need to appoint a trustee for the supervision of every small corporation undergoing reorganization, even though it appeared capable of carrying on the business during the proceeding. Continued possession by the Debtor, authorized by § 156, is subject at all times to judicial termination and the appointment of a disinterested trustee under § 159. But so long as the Debtor remains in possession, it is clear that the *corporation* bears essentially the same fiduciary obligation to the creditors as does the trustee for the Debtor out of possession.[16] Moreover, the duties which the corporate Debtor in possession must perform during the proceeding are substantially those imposed upon the trustee, § 188. It is equally apparent that in practice these fiduciary responsibilities fall not upon the inanimate

---

employment, *In re Wil-low Cafeterias*, 111 F. 2d 429; and while the *rate* of compensation of an officer must be approved initially under § 191, nothing either in that section or in § 247 suggests that weekly or monthly applications for the *payment* of salary at that rate are also required. Rather, employees and officers receive compensation during the proceeding subject to whatever fiduciary obligations are incumbent upon them, and contingent upon their continued fulfilment of those obligations.

[15] The phrase was suggested by SEC Commissioner (later Judge) Jerome Frank, in Hearings on H. R. 8046 before a Subcommittee of the Senate Judiciary Committee, 75th Cong., 2d Sess. 99.

[16] See, *e. g., In re Avorn Dress Co.*, 78 F. 2d 681, 683; *In re Los Angeles Lumber Prods. Co.*, 46 F. Supp. 77, 88; Gerdes, Corporate Reorganizations: Changes Effected by Chapter X of the Bankruptcy Act, 52 Harv. L. Rev. 1, 18–19 (1938).

corporation, but upon the officers and managing employees who must conduct the Debtor's affairs under the surveillance of the court,[17] §§ 188–191. If, therefore—as seems beyond dispute from the very terms of the statute— the trustee is himself a fiduciary within the meaning of § 249, logic and consistency would certainly suggest that those who perform similar tasks and incur like obligations to the creditors and shareholders should not be treated differently under the statute for this purpose.[18]

The foregoing discussion answers two further arguments grounded on statutory construction. First, it has been contended that officers and managing employees must be deemed to be outside § 249 because their compensation derives from "consensual arrangements" and because they were compensated before the filing of the petition for the very services they continue to perform thereafter. The suggestion overlooks, with respect to officers at least, the requirement imposed by § 191 of judicial approval not only of salary but of the holding of office itself. More important, as to both officers and managing employees, the suggestion fails to appreciate the change which the filing of the petition and judi-

---

[17] See 6 Collier, Bankruptcy (14th ed. 1947), 2441–2442. Cf. Securities and Exchange Comm'n, Report on the Study and Investigation of the Work, Activities, Personnel and Functions of Protective and Reorganization Committees, pt. I, 312–329, 868–872.

[18] One commentator has observed of the Court of Appeals' decision in this case: "While the court concluded that . . . [the respondents] were not acting in a fiduciary capacity for purposes of § 249, it recognized that such persons owed fiduciary obligations to the corporation which extended to their dealing in its securities. To the extent that the court's opinion can be read to suggest only selective accountability for profits from such transactions, it is at odds with the rigorous rule of accountability embodied in earlier decisions." Brudney, Insider Securities Dealings During Corporate Crises, 61 Mich. L. Rev. 1, 35, n. 109, at 36 (1962). For a similar view of this case see 48 Va. L. Rev. 751, 755–756 (1962).

cial approval of the Debtor's remaining in possession necessarily cause in the *obligations,* if not in the day-to-day *activities* of all responsible officials. The difference in an officer's status and responsibilities before and after the start of a reorganization is most clearly reflected in the § 191 requirement of judicial approval upon which an officer's or director's continued service is contingent. The broader principle which underlies that requirement and emphasizes the change in responsibility is that the court's willingness to leave the Debtor in possession is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee. And if they default in this respect, the court may at any time replace them with an appointed trustee.

Finally, it is suggested that important differences between "what is demanded of a trustee and what is expected of officers of a debtor in possession" require the omission of the latter from § 249. 296 F. 2d, at 683. The argument proves too much, for surely the prohibitions of § 249 cover persons other than the trustee—various groups such, at the least, as those listed in §§ 241–243, who are held to a fiduciary standard although, unlike the trustee himself, they need not be "disinterested" within the meaning of § 158 (1). That the officers of a Debtor in possession are not "trustees" for all purposes is beyond dispute, but that proposition does not provide an answer to the question before us—which of those persons who are *not* disinterested and could *not* therefore serve as trustees under § 156 may nonetheless be regarded as *fiduciaries* within the meaning of § 249.

In concluding as we do that an officer or a managing employee of a Debtor in possession may be a fiduciary for purposes of § 249, we do not mean to suggest that one who holds such a position is *necessarily* within that section. That question requires in each case a careful exam-

ination of the nature of the particular applicant's activities, powers and responsibilities in connection with the reorganization. As to certain classes of participants—committee members and attorneys, for example—the very terms of § 249 clearly make its sanctions applicable. As to other groups—salaried employees who take no part in the management of the Debtor, for instance—it may be equally clear that § 249 was not meant to impose any ban on trading in the Debtor's stock. But in the case of an officer or managerial employee, the question whether the particular applicant is a "fiduciary" under the statute is one which requires careful appraisal of the relevant facts.[19]

In this case the District Court took evidence concerning both Fried's and Weinstein's activities and responsi-

---

[19] In the context of § 16 (b) of the Securities Exchange Act, for example, it is clear that a determination of who is a corporate "officer" within the meaning of the statute requires a flexible assessment of particular powers and responsibilities rather than a rigid rule of thumb. So the Court of Appeals for the Second Circuit has held, *Colby* v. *Klune*, 178 F. 2d 872. In that case Judge Jerome Frank observed on a question quite similar to the one now before us, "the functions of a 'vice-president' or 'comptroller' are not so well settled as to be self-evident, and there is need for evidence concerning those functions. . . . The question is what this particular employee was called upon to do in this particular company, *i. e.*, the relation between his authorized activities and those of this corporation." 178 F. 2d, at 875.

Similarly, the question of when a stockholder participating in a reorganization proceeding is acting in a "representative" capacity within the meaning of § 249, is one which requires an examination of the particular facts. See, *e. g.*, *Young* v. *Potts*, 161 F. 2d 597; *Finn* v. *Childs Co.*, 181 F. 2d 431. In *Young* v. *Higbee Co.*, 324 U. S. 204, we undertook just such an analysis of the activities of two stockholders in order to determine, for a different but related purpose, whether they had served during the reorganization in a "representative" capacity. Cf. *Pepper* v. *Litton, supra*. And see Note, Bankruptcy: Corporate Reorganization: Survey of Chapter X in Operation, 18 N. Y. U. L. Q. Rev. 399, 475 (1941).

bilities, and concluded that each was for these purposes a "fiduciary." Unless the District Court erroneously interpreted the statute, which we have held it did not, its findings as to the status of the respondents should bind our review of the case. Since there was ample evidence to support those findings, and the Court of Appeals did not question them, § 249 applies to Weinstein and Fried.

### III.

But the bare holding that § 249 has been violated does not automatically determine the consequences of such a violation. We turn now to that aspect of the case. There is no doubt that proof of trading in contravention of the statute requires at least the denial of any application for past compensation then pending, and the disallowance of all future compensation.[20] The District Court went so far but declined to go further. We must now consider whether the District Court was also required, in order fully to effectuate the policies of § 249, to order restitution or recoupment of salaries already received by Fried and Weinstein for their beneficial services to the Debtor. As we have observed, the fact that these salaries

---

[20] See, e. g., *Surface Transit, Inc.,* v. *Saxe, Bacon & O'Shea,* 266 F. 2d 862. Moreover, proof of trading in violation of § 249 forfeits any claim to reimbursement for expenses incurred by the applicant in connection with the proceeding. *In re Inland Gas Corp.,* 309 F. 2d 176. It should be unnecessary to add that such sanctions are imposed not as penalties upon the trading itself—for other principles govern the extent to which and conditions under which an insider may profit from investment in the Debtor's securities during the proceeding. Rather, the rationale underlying the denial of compensation and expenses is that allowances may be made, under general equitable limitations and the statutory provisions alike, only for "loyal and disinterested service in the interest of those for whom the claimant purported to act." *Woods* v. *City Nat. Bank & Trust Co., supra,* at 268. Section 249 does no more than declare that one who invests in the Debtor's stock during a reorganization ceases to be disinterested for purposes of compensation and allowances.

have already been paid under approval of the court does not necessarily preclude their recoupment.

It is argued, however, that to require restitution at this late date, particularly when the trading involved small amounts of stock and was carried on apparently in good faith and without knowledge of the existence of § 249, imposes an unduly harsh sanction—a remedy disproportionate to the offense. While we recognize that in a case such as this the remedy is indeed a severe one, we cannot find that Congress intended anything less. To hold that one who trades in violation of § 249 forfeits only his right to *future* compensation would place a premium on concealment of transactions in the Debtor's stock and thereby jeopardize the salutary policies of the statute. Moreover, it is well settled that when the question arises in a terminal application for compensation or reimbursement under § 247, an applicant who has engaged in forbidden transactions near the end of the proceeding is to be denied compensation for all services he has rendered to the Debtor, however valuable those services may have been.[21] Thus the policies of the statute afford no alternative but to order the restitution of all amounts of compensation and reimbursement received by these respondents since the start of the reorganization.

If the remedy seems harsh in this case, it is wholly consistent with the uniform application of this statute by the lower courts. As the Court of Appeals for the Second Circuit has recognized in an earlier case, "[t]his result may well work harshly in individual cases . . . . But in § 249 of the Bankruptcy Act Congress clearly intended drastic results and thought them necessary to eliminate the serious abuses of insider information which had long been existent in equity reorganizations. . . . In the past excuses of inadvertence or *de minimis* have not been per-

---

[21] Cf., *e. g., In re Cosgrove-Meehan Coal Corp.*, 136 F. 2d 3.

mitted to undermine the section . . . ." *Surface Transit, Inc., v. Saxe, Bacon & O'Shea,* 266 F. 2d 862, 868 (C. A. 2d Cir.). The lower federal courts have uniformly found it immaterial to the application of § 249, for example, that the extent of trading may have been minimal; that the applicant may never have realized the profit from the transaction, or may actually have suffered a loss; that the trading may have been done in response to a personal or corporate emergency; or that the applicant may neither have possessed nor attempted to acquire inside information bearing on the value of the Debtor's stock.[22]    In light of the seriousness of the abuses which the statute was designed to prevent, it has been thought that to allow any such exception or dispensation would frustrate the manifest intent of Congress to impose an effective prophylactic rule.[23]    That the rule occasionally bars compensation to those whose conduct might not have been considered inequitable or disloyal in the absence of such a statute is

---

[22] See, *e. g., In re Midland United Co.,* 159 F. 2d 340; *In re Central States Electric Corp.,* 206 F. 2d 70; *Surface Transit, Inc.,* v. *Saxe, Bacon & O'Shea,* 266 F. 2d 862; *In re Arcade Malleable Iron Co.,* 35 F. Supp. 461; *In re Norwalk Tire & Rubber Co.,* 96 F. Supp. 274.   Several cases have recognized narrow exceptions to § 249 where the trading was carried on by a relative of the applicant or claimant, without his knowledge and not for his account, *e. g., Nichols* v. *Securities & Exchange Comm'n,* 211 F. 2d 412.   But where the trading has been done with the applicant's knowledge or for his account, it is immaterial that he may not realize whatever profit results, *In re Central States Electric Corp., supra; In re Midland United Co.,* 64 F. Supp. 399, 415–416.   See generally, 45 Va. L. Rev. 1070–1071 (1959).

[23] See generally, *e. g., In re Inland Gas Corp.,* 309 F. 2d 176; 11 Remington, Bankruptcy (Hayes rev. ed. 1961), 535–538; Teton, Reorganization Revised, 48 Yale L. J. 573, 602–603 (1939); Bandler, Securities Trading and Fee Sharing Under Chapter X of the Bankruptcy Act, 15 Record of the Assn. of the Bar of the City of N. Y. 230 (1960).

no reason to suspend or make selective the operation of the statute's sanctions.

We do not agree, however, that a violation of § 249 of itself requires the discharge of the violator from his corporate office. While a bankruptcy court possesses extensive power over the tenure and the conduct of officers and employees, and might find that trading during the reorganization rendered an officer unfit for further service to the Debtor, even without compensation, that result does not follow inexorably.[24] In the present case the District Court apparently relieved Fried and Weinstein of their corporate responsibilities solely because of the violation of § 249. The Court of Appeals, finding no violation, saw no occasion to determine whether the discharge of the respondents might nevertheless be justified by considerations outside that section.

The question of the bankruptcy court's power to remove a corporate officer is a difficult and complex one, in which state and federal law may be intricately interwoven.[25] We therefore intimate no view concerning

---

[24] See Ferber, Blasberg and Katz, Conflicts of Interest in Reorganization Proceedings Under the Public Utility Holding Company Act of 1935 and Chapter X of the Bankruptcy Act, 28 Geo. Wash. L. Rev. 319, 360 (1959). As the District Court noted in ordering the removal of Fried, a bankruptcy court possesses considerable authority to supervise the employment policies of a Debtor in possession under §§ 188–191. It is not clear whether the District Court found a basis in its general powers for the removal of Fried and the termination of Weinstein's active duties, for it appears that the court was principally if not exclusively influenced by the violation of § 249. We do not mean to suggest that a violation of § 249 might not, standing alone, justify an order for the violator's discharge, but only to make clear that this result does not follow automatically. In any event, we think that we should not undertake to decide this question without first having the view of the Court of Appeals.

[25] It is not clear why the District Court felt powerless to order Weinstein's removal from his corporate office. Nor is it clear to what extent the court felt the question of its power to be governed by

either the court's powers with respect to the removal of an officer, or the propriety of exercising in this case whatever powers may exist. That question must be reconsidered by the courts below in the light of our holding that the conduct of the respondents did constitute a violation of § 249 which disentitles them to all compensation.

The judgment is reversed and the cause is remanded to the Court of Appeals for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART joins, concurring in part and dissenting in part.

I agree with the dismissal of the writ respecting the issues involved in *Fried* v. *Margolis,* 296 F. 2d 670, but would affirm the judgment of the Court of Appeals in the *Nazareth* case, 296 F. 2d 678, relating to § 249 of the Bankruptcy Act. On that score I fully agree with Judge Friendly that at "the very least, courts are justified in demanding a clear indication of Congressional purpose before inflicting" such a "Draconian penalty" (296 F. 2d, at 683) as the Court's decision now imposes on petitioners Weinstein and Fried. The very triviality of the transactions involved in this particular case cautions against acceptance of the Court's ready construction of § 249.

---

pertinent state law. Although § 191 gives to the bankruptcy court the power to approve or disapprove an officer's assumption of office and his rate of compensation, there is a question to what extent those powers also comprehend a power of removal as a matter exclusively of federal law. We have no occasion to decide such questions at this stage of the proceeding.