In re PENICK PHARMACEUTICAL, INC. and Penick Corporation, Debtors.

UNOFFICIAL COMMITTEE OF EQUITY HOLDERS OF PENICK PHARMACEUTICAL, INC., Plaintiff,

v.

Drew McMANIGLE, as Chapter 11 Trustee of Penick Pharmaceutical, Inc. and Penick Corporation., Defendant.

Bankruptcy Nos. 94–B–42808, 94–B–42809(BRL). Adversary No. 98/8290A.

United States Bankruptcy Court, S.D. New York.

Nov. 30, 1998.

Hodgson, Russ, Andrews, Woods & Goodyear, LLP by Garry M. Graber, New York City, for Defendant.

Menaker & Herrmann LLP by Michael J. Levin, New York City, for Plaintiff.

MEMORANDUM DECISION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING ADVERSARY PROCEEDING

BURTON R. LIFLAND, Bankruptcy Judge.

Before me are the cross-motions for summary judgment of, respectively, (1) the Defendant, Drew McManigle (the "Trustee"), the Chapter 11 Trustee of Penick Pharmaceutical, Inc, ("PPI") and its subsidiary, Penick Corporation (the "Debtor" and together with PPI, the "Debtors") and (2) the Plaintiff, the Unofficial Committee of Equity Holders of PPI (the "Committee"). For the reasons set forth below, I grant the Trustee's motion and deny that of the Committee.

*Background*

Except as hereinafter noted, the relevant facts are not in dispute. On June 9, 1994 (the "Petition Date"), the Debtors filed chapter 11 petitions in this court. The cases were consolidated for procedural purposes only and are being jointly administered. From the Petition Date until April 28, 1997, the Debtors continued to operate as debtors in possession. However, on April 28, 1997, this court appointed the Trustee as chapter 11 trustee pursuant to section 1104 of the Bankruptcy Code. Both pre- and post-petition, the Debtor has been engaged in the manufacture and sale of pharmaceutical products and in research and development with respect thereto.

On March 17, 1998, the Committee filed its complaint herein seeking a declaration that a certain new process relating to the manufacture of opium derivatives (the "Process") is not the property of *the bankruptcy estate* of the Debtor but is rather the property of the Debtor, free and clear of all claims of the Trustee, creditors and any other entity. Subsequently, the Trustee filed his motion for summary judgment and a determination

that the Process is property of the estate and the Committee cross-moved for summary judgment on its claim.

The Process is the invention of Bao–Shan Huang ("Dr. Huang"), Yansong Lu ("Mr. Lu"), Ben–Yi Ji. ("Dr. Ji" and together with Dr. Huang and Mr. Lu, the "Employee Inventors") and Aris P. Christodoulou ("Dr. Christodoulou" and together with the Employee Inventors, the "Inventors"). Dr. Christodoulou was, at all relevant times until May 9, 1997, when he resigned, an officer and director of the Debtor. He is a shareholder of PPI and a member of the Committee. Dr. Huang was employed by the Debtor as a consultant to work in its research and development department (the "R & D Department") in 1994. In connection therewith, on May 10, 1994[1] he signed an Employee Confidentiality and Invention Assignment Agreement containing provisions in the following terms:

2. Employee shall disclose promptly to Employer any and all INVENTIONS conceived or made by him/her during his/her employment with Employer, whether or not made during his/her hours of employment or with the use of Employer facilities, materials, or personnel, and whether made solely or jointly with others, and hereby assigns all of his/her entire right, title and interest in any such INVENTIONS to Employer. As used herein, the term INVENTIONS means any and all developments, innovations, discoveries, improvements and ideas, whether patentable or not.

3. Employee shall, whenever requested to do so by Employer, execute any applications, confirmatory assignment documents, or other instruments which Employer shall consider necessary, to apply for and obtain Letters Patent in the United States, or any foreign country, and shall take such other action at Employer's expense as Employer

1. The Committee in its Statement of Uncontested Facts Pursuant to Local Rule 7056–1 contends that Dr. Huang was employed by Penick *after* the Petition Date and in his affidavit of September 21, 1998, Dr. Christodoulou states that "of the [Inventors], I was the only one who had any connection with Penick prior to the Petition Date." The Committee has, however, produced

no evidence to cast doubt on Dr. Huang's evidence that he entered into his Employee Confidentiality and Invention Assignment Agreement on May 10, 1994, i.e. one month before the Petition Date. Nothing, however, turns on this discrepancy and my decision would be the same even assuming Dr. Christodoulou to be correct in his assertion.

deems necessary to protect Employer's interests in the INVENTIONS.

The agreement was signed by Dr. Christodoulou, as director, on behalf of the Debtor. In December of that year, Dr. Huang formulated certain synthetic routes for the Process. In June 1995, Dr. Huang was hired by the Debtor as an employee in the R & D Department and in that capacity, in January 1996, conducted the first laboratory test of the Process. In October 1996, Dr. Ji and Mr. Lu were hired by the Debtor, initially as consultants and then as employees in the R & D Department. Both signed Employee Confidentiality and Invention Assignment Agreements containing terms identical to those in Dr. Huang's Employee Confidentiality and Invention Assignment Agreement set forth above. Again, these agreements were signed by Dr. Christodoulou, as director, on behalf of the Debtor. Dr. Ji and Mr. Lu developed certain intermediate synthetic routes used in the Process. The respective fees and salaries of the Employee Inventors were paid by the Debtor's bankruptcy estate and laboratories, chemicals and equipment belonging to such estate were used in researching and developing the Process.[2] Dr. Christodoulou's part in the invention of the Process was to conceptualize the use of morphine as a starting material for the preparation of certain opium derivatives.

The Debtor filed the first provisional application for the Process with the United States Patent & Trademark Office (the "P & TO") on July 26, 1996, the second provisional patent application for the Process with the P & TO on April 29, 1997 and the regular patent application for the Process with the P & TO on July 11, 1997. The Debtor's basic patent application was allowed by the P & TO and the Debtor is awaiting a response from the P & TO with respect to six divisional patent applications arising from the regular patent application. The Debtor paid all costs and expenses in connection with such applications, including in respect of the hiring of special patent counsel, Burgess, Ryan & Wayne, whose appointment as special counsel

to the Trustee was approved by this court on July 22, 1997.

Meanwhile, by an Assignment of Application for Patent (the "Assignment") dated July 8 and 9, 1997, "in consideration of . . . $1.00 . . . and other valuable consideration," the Inventors assigned to "Penick Corporation" their interest in the Process and the patent application and Letters Patent relating thereto, in the case of the Employee Inventors, in accordance with the terms of their respective Employee Confidentiality and Invention Assignment Agreements.

*Discussion*

Federal Rule of Civil Procedure 56(c), made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir.1994). Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Summary judgment is appropriate here because no material factual dispute exists.

■ I turn, now, therefore, to the issues of law. When a debtor files for bankruptcy protection, a bankruptcy estate is created. Under section 541(a)(1) of the Bankruptcy Code, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1)(1994). Property of the estate also includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor

---

**2.** A statement to this effect in the Trustee's Statement of Facts filed pursuant to Local Bankruptcy

Rule 7056–1 was not controverted by the Committee in its Counter Statement or elsewhere.

after the commencement of the case," 11 U.S.C. § 541(a)(6) (1994), and "[a]ny interest in property that the estate acquires after commencement of the case." 11 U.S.C. § 541(a)(7) (1994). Thus, the estate does not remain static. *Baker v. Rank (In re Baker),* 154 F.3d 534, 537 (5th Cir.1998) (quoting *Calder v. Job (In re Calder),* 973 F.2d 862 (10th Cir.1992), quoting *Robb v. Lybrook (In re Lybrook),* 107 B.R. 611, 612 (Bankr. N.D.Ind.1989)).

The Trustee, on the one hand, argues that the Process belongs to the bankruptcy estate of the Debtor pursuant to section 541(a)(6) or (7) of the Bankruptcy Code. The Committee, on the other hand, contends that the Process is not "property of the estate" under section 541(a)(6) because it is derived not from property of the estate but from "the minds and intellectual activity of [the Inventors]," [3] nor under section 541(a)(7) because it was acquired not by the estate pursuant to the Assignment but by the "post-petition Debtor".[4]

The parties have extensively briefed the question of whether a corporate debtor may hold property as non-estate property, the Trustee arguing, in essence, that post-petition property acquisitions necessarily constitute estate property under section 541(a)(6) or (7). For purposes of this motion, however, this court need not resolve the theoretical question because it is clear on the undisputed facts that the Process was derived from property of the estate so as to bring it within section 541(a)(6) and/or acquired by the estate so as to bring it within section 541(a)(7).

Upon the filing of a voluntary chapter 11 petition, a debtor automatically becomes "debtor in possession." *See* 11 U.S.C. § 1101(1) (1994).[5] As such, it occupies the shoes of a bankruptcy trustee in every major way. *See* 11 U.S.C. §§ 1107(a) [6] and 323(a) [7] (1994); *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 200 n. 3, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983); *In re Hughes,* 704 F.2d 820, 822 (5th Cir.1983); *In re Savino Oil & Heating Co.,* 99 B.R. 518, 524 (Bankr. E.D.N.Y.1989). As a *de jure* trustee, it holds its powers in trust for the benefit of creditors. *See Wolf v. Weinstein,* 372 U.S. 633, 649, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963) ("[S]o long as the Debtor remains in possession, it is clear that the corporation bears essentially the same fiduciary obligations to the creditors as does the trustee for the Debtor out of possession."); *In re Martin Custom Made Tires Corp.,* 108 F.2d 172, 173 (2nd Cir.1939); *In re Paolino,* 53 B.R. 399, 401 (Bankr. E.D.Pa.1985); *In re Modern Office Supply, Inc.,* 28 B.R. 943, 944 (Bankr.W.D.Okl.1983); *In re E. Paul Kovacs and Co., Inc.,* 16 B.R. 203, 205 (Bankr.D.Conn.1981). Specifically, in the case of an inanimate debtor in possession such as a corporation, the fiduciary duties borne by a trustee for a debtor out of possession fall on the debtor's directors, officers and managing employees, *see Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 352, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) ("if a debtor remains in possession ... the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession"); *Wolf v. Weinstein,* 372 U.S. 633, 649–50, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963), who have a duty to maximize the value of the estate, *see Commodity*

---

**3.** See Committee's Motion for Summary Judgment, ¶ 15.

**4.** See Committee's Motion for Summary Judgment, ¶ 16.

**5.** Section 1101(1) provides:

"debtor in possession" means debtor except when a person has qualified under section 322 of this title is serving as a trustee in the case
...
11 U.S.C. § 1101(1) (1994).

**6.** Section 1107(a) provides:

(a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, *a debtor in possession shall have all the rights,* other than the right to compensation under section 330 of this title, and powers, *and shall perform all the functions and duties,* except the duties specified in section 1106(a)(2), (3) and (4) of this title, of a trustee serving under this chapter.
11 U.S.C. § 1107 (1994) (emphasis added).

**7.** Section 323(a) provides:
(a) The trustee in a case under this title is the representative of the estate.

*Futures Trading Comm'n v. Weintraub,* 471 U.S. at 352, 105 S.Ct. 1986, and who are burdened to ensure that the resources that flow through the debtor in possession's hands are used to benefit the unsecured creditors and other parties in interest. *See In re Harp,* 166 B.R. 740, 746–47 (Bankr.N.D.Ala. 1993). Thus, upon filing its petition, the Debtor became debtor in possession and, through its management, including Dr. Christodoulou, was burdened with the duties and responsibilities of a bankruptcy trustee.

In addition, however, as debtor in possession and *de jure* trustee, the Debtor had certain statutory powers. Most importantly, it was authorized to operate its business pursuant to section 1108 of the Bankruptcy Code.[8] Pursuant to section 363(c)(1) of the Bankruptcy Code, as debtor in possession, the Debtor was permitted to conduct its business in the ordinary course.[9] As was the case outside of bankruptcy, the Debtor then acted through its directors and officers, including Dr. Christodoulou, who continued to operate its business. *See In re Johns–Manville Corp.,* 801 F.2d 60, 64 (2d Cir.1986); *In re Potter Instrument Co.,* 593 F.2d 470, 474–75 (2d Cir.1979); *In re Dark Horse Tavern,* 189 B.R. 576, 581 (Bankr.N.D.N.Y.1995).

Thus, in the course of the operation of the Debtor's business by the Debtor as debtor in possession, the Employee Inventors were employed by the Debtor on behalf of the Debtor's estate. *See In re Herberman,* 122 B.R. 273, 281 (Bankr.W.D.Tex.1990) ("During the interval between filing the petition and plan confirmation all persons working on behalf of the debtor-in-possession are in fact employees of the estate for so long as the entity is in bankruptcy."). When Dr. Christodoulou signed Dr. Ji and Mr. Lu's respective Employee Confidentiality and Invention Assignment Agreements on behalf of the Debtor, he did so as agent of the Debtor as debtor in possession and in furtherance of his aforementioned fiduciary duties.[10] These Employee Confidentiality and Invention Assignment Agreements gave the Debtor, as debtor in possession, on behalf of the estate, certain rights in the inventions of the Employee Inventors. These rights became property of the estate pursuant to section 541(a)(7) of the Bankruptcy Code. The benefit of Dr. Huang's Employee Confidentiality and Invention Assignment Agreement, which predated the filing of the petition, was estate property pursuant to section 541(a)(1). The Employee Inventors' salaries were paid by the estate and when the Employee Inventors rendered their services, it was to the Debtor as debtor in possession. The laboratories, chemicals and equipment used by the Employee Inventors were property of the estate either because they were property of the Debtor at the Petition Date, *see* 11 U.S.C. § 541(a)(1) (1994), or were acquired by the estate using funds derived from the Debtor's continuing operation of its business and therefore property of the estate pursuant to section 541(a)(7). When the Employee Inventors entered into the Assignment, it was in furtherance of their respective obligations to the Debtor as debtor in possession under the Employee Confidentiality and Invention Assignment Agreements and in exchange for consideration provided by the estate. Similarly, Dr. Christodoulou assigned his interest in the Process in exchange for consideration provided by the estate. Finally, the application for patent protection of the Process was, until the appointment of the Trustee, prosecuted on behalf of the Debtor as debtor in

11 U.S.C. § 323(a) (1994).

8. Section 1108 provides:

Unless the court ... orders otherwise, the trustee may operate the debtor's business.
11 U.S.C. § 1108 (1994).

9. Section 363(c)(1) provides in relevant part:

If the business of the debtor is authorized to be operated under section ... 1108 ... and unless the court orders otherwise, the trustee may enter into transactions ... in the ordinary course of business, without notice or a hearing

and may use property of the estate in the ordinary course of business without notice or a hearing.
11 U.S.C. § 363(c)(1) (1994). *See also In re DeLuca Distributing Co.,* 38 B.R. 588, 591 (Bankr.N.D.Ohio 1984) (section 363 applies equally to debtor in possession).

10. Indeed, were I to accept the argument that Dr. Christodoulou obtained the benefit of the Employee Confidentiality and Invention Assignment Agreements not for the estate but for the "post-petition Debtor," it would be hard to persuade me that Dr. Christodoulou had not acted in breach of his fiduciary duties.

possession, financed by estate funds. Upon the appointment of the Trustee, the Debtor's management was displaced and the Trustee assumed management of the operation of the Debtor's business for the estate. The patent application continued to be prosecuted on behalf of the estate.

Nobody would seriously doubt that the tangible product of a debtor manufactured by its employees' "hands" post-petition and pre-confirmation were property of the estate and the Process is no different merely by virtue of its being intangible and the product of an intellectual process. In fact, development of the Process was apparently not the product of a purely intellectual exercise as it required physical testing using estate property. While the Inventors' minds might not have been property of the estate, their work product indubitably was. To the extent that the Process does not constitute product of or from property of the estate within section 541(a)(6), it was acquired by the estate pursuant to the Assignment, and therefore property of the estate pursuant to section 541(a)(7) of the Bankruptcy Code.

*Casey v. Hochman,* 963 F.2d 1347 (10th Cir.1992), a case relied on by the Committee, is readily distinguishable from this case. There the court held that the patent on a device invented by a debtor after the filing of his chapter 11 petition was not included in property of the estate. *See id.* at 1350. However, there the debtor was an individual who was not bound by any agreement or fiduciary duty to deliver up his invention to the estate. In contrast, here, the Employee Inventors were employed by the debtor in possession on behalf of the estate and bound by the terms of their employment to assign their inventions to their employer and, in fact, did so. Dr. Christodoulou was similarly bound by reason of his fiduciary obligations.

*Conclusion*

Accordingly, the Committee's motion for summary judgment is hereby denied, the Trustee's motion for summary is hereby granted and this adversary proceeding is dismissed. It is SO ORDERED.