In the Matter of **LYNTEX CORPO-
RATION** et al., Debtors.

No. 73 B 751.

United States District Court,
S. D. New York.

Sept. 4, 1975.

Donovan, Leisure, Newton & Irvine by John V. Thomas, New York City, for the Trustee.

Olwine, Connelly, Chase, O'Donnell & Weyher by Joseph M. Burke, New York City, for claimant.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Lester M. Ritter, formerly the chief executive officer of Lyntex Corporation, makes four claims for additional compensation, seeking payment for: (1) two weeks of further vacation pay; (2) six weeks of severance pay; (3) approximately seven months of sick pay; and (4) an increase in his rate of compensation from $45,000.00 per year to $50,000.00 per year. The Court conducted an evidentiary hearing on June 6 and 9, 1975.

Ritter was employed by Franken Trimming Co., Inc., a subsidiary of Lyntex, pursuant to an Employment Agreement dated March 31, 1971 ("Employment Agreement" or "Agreement"). That Agreement provided that it would be in effect from no later than September 1, 1971 until September 1, 1974. Ritter was to be paid a salary of not less than $50,000.00 annually. The Agreement further provided that if he were unable to perform his services for a period of six consecutive months, Franken Trimming could terminate this contract on not less than thirty days notice after the six month period. The Agreement makes no mention of vacation or severance pay.

Although the Agreement provided that it may not be changed orally, on May 12, 1972, Ritter agreed orally with the Chairman of the Board of Lyntex to

accept a salary of $45,000.00 per year, or $865.00 per week. This reduction in salary was an act of good faith made necessary by the financial ailments of the Lyntex companies. It was agreed that if business improved, Ritter would be paid the difference in salary.

On April 15, 1974, pursuant to an order of this Court, proceedings under Chapter X of the Bankruptcy Act were commenced for the reorganization of Lyntex and two of its subsidiaries. The order authorized the Trustee to employ Lawrence S. Wasserman as President of Lyntex, and Richard B. Stoll and Lester M. Ritter as Vice Presidents of Lyntex at salaries of $760.00 per week. Almost immediately thereafter, Wasserman and Stoll resigned and left the business.

Ritter informed the Trustee that he would not continue to work at this salary. On May 1, 1974, pursuant to an order commencing Chapter X proceedings as to six other Lyntex subsidiaries, the Trustee was authorized to employ Ritter as an officer of the debtor corporations at a salary of $865.00 per week, the same salary that he had agreed to accept in 1972. At that time, Wasserman and Stoll had left. Ritter continued to perform his duties under the direction of the Trustee until July 29, 1974. In the early morning of July 30, 1974, Ritter suffered a heart attack and did not return to work at the debtor corporations.

The Trustee and the Securities and Exchange Commission contend that the claims here asserted are governed by the prior orders of this Court pursuant to § 191 of the Bankruptcy Act, 11 U.S.C. § 591, which reads in part: "A trustee or debtor in possession may employ officers of the debtor at rates of compensation to be approved by the court." The Trustee contends that, if extraordinary fringe benefits were to be included in the compensation of officers, prior approval by the Court would be required.

The applicant advances several theories. First, he asserts that rights and benefits granted to him under his Employment Agreement, or pre-bankruptcy practices of the debtor corporations, are preserved, except to the extent they are expressly modified by the Court's order. Ritter contends that his Employment Agreement, as orally modified, together with custom and practice at the Lyntex corporations, was an executory contract which the Trustee elected not to reject. Ritter also asserts that certain benefits were the subject of oral agreement with the Trustee. Applicant contends that he is entitled to severance pay under an estoppel theory predicated upon his justifiable reliance upon the Trustee's practice regarding other employees. Finally, Ritter asserts that he is entitled to a higher rate of compensation because of the benefit that he conferred upon the bankruptcy estate through his services.

■ The Court rejects applicant's argument that the terms of his employment continued as before, as a portion of an executory contract not rejected by the Trustee, under the powers conferred by § 116(1) of the Bankruptcy Act, 11 U.S.C. § 516(1). Assuming momentarily that his prior employment arrangements constituted an executory contract, applicant's argument fails because it is axiomatic that an executory contract "cannot be rejected piece-meal; it must be rejected in its entirety or not at all." 6 Collier on Bankruptcy ¶ 3.24, at 592.

■ Moreover, the Trustee's employment of an officer of the Chapter X debtor has been subjected to special treatment and greater Court scrutiny "to safeguard the administration of the debtor's property in custody of the court." *In re J. P. Linahan, Inc.,* 111 F.2d 590, 592 (2d Cir. 1940). The additional responsibilities imposed on the Court by the Bankruptcy Act distinguish the Trustee's employment of an officer from other employment contracts and other executory contracts. *Cf. Shopmen's Local Union No. 455, Int'l Ass'n. of Bridge, Structural and Ornamental Iron Workers v. Kevin Steel*

Products, Inc., 519 F.2d 698 (2d Cir. 1975); In re Public Ledger, 161 F.2d 762 (3d Cir. 1947).

We now turn to Ritter's individual claims for compensation:

### Vacation Pay

■ Ritter asserts that it had been the policy of Franken Trimming to give its officers six weeks paid vacation each year. The Trustee testified that his agreement with Ritter was for four weeks vacation. The Trustee has paid Ritter for four weeks vacation and it is this difference of two weeks salary that is in issue here.

The Court credits the testimony of the Trustee as to the disputed facts and finds that there was an oral agreement for four weeks vacation.

This Trustee has been most generous in his treatment of Ritter's claims for vacation. As a condition of his continued employment, in addition to a higher salary than the Court had authorized initially, Ritter demanded and received payment from the Trustee of his unsatisfied claim to two weeks vacation pay from 1973. There is no reason to believe that the Trustee would now renege on a promise of an extended period for vacation if made.

Assuming, arguendo, that Ritter had some basis for the belief that he would receive six weeks vacation each year, his application still lacks merit. It is not disputed that vacation time was to be accrued during the course of the work year. Ritter's final day at work was July 29, 1974. As of that date, Ritter had accrued slightly in excess of three weeks' vacation for the year 1974. Furthermore, since Ritter's employment was pursuant to the Court's orders of April 15th and May 1st, and not as a result of prior agreements, it would not be unreasonable to compute his vacation time as accruing from April 15, 1974 for purposes of determining an allowance for additional compensation as an expense of administration. This the Trustee did not do.

### Severance Pay

Ritter claims that six weeks severance pay is due to him because he acted in reliance on a course of conduct adopted by the Trustee in discharging other non-union employees. Claimant asserts that, under New York law, an employer may be liable for the payment of severance pay to a discharged non-union employee, if the employer engaged in a practice of making such payments and the employee relied on this practice in accepting or continuing employment. Morschauser v. American News Company, 6 A.D.2d 1028, 178 N.Y.S.2d 279 (1st Dept.1958). Cf. Allen v. Crowell-Collier Publishing Company, 26 A.D.2d 516, 270 N.Y.S.2d 941 (1st Dept.1966).

■ Ritter contends that a pattern was established by four cases of which he has knowledge. These four were persons employed by the Trustee in capacities different from Ritter, and different from each other. They worked in different localities at different rates of compensation. To Ritter's knowledge, each did not receive the same amount of severance pay, and none received as much as six weeks salary. The employment of these persons, unlike that of Ritter, did not require Court approval under § 191 of the Bankruptcy Act.

The Trustee testified that, in each instance that severance pay was given, it was pursuant to a separate express agreement. The Trustee and Ritter had no such agreement. In one instance, what Ritter believed to be severance pay was in fact payment for accrued vacation time; similarly, in another case, what Ritter believed had been four weeks severance pay, the Trustee explained was three weeks accrued vacation pay and one week severance pay. The Court is persuaded that there was no pattern upon which Ritter could be said to have relied justifiably, or that would warrant imposition of liability by estoppel.

■ Furthermore, we would reach the same result, assuming that the al-

lowance or disallowance of this claim is not governed by state law but rather by principles of federal equitable jurisprudence. See *Heiser v. Woodruff*, 327 U.S. 726, 731–33, 66 S.Ct. 853, 90 L.Ed. 970 (1946); *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946). What is at issue here is an allowance, requested as an expense of administration, arising out of an employment arrangement made pursuant to Court order. As such, it may be considered a matter within the peculiar interest of federal bankruptcy decisional law, and resolved without regard to state law consequences applicable in a non-bankruptcy context.

The applicant provided services for the Trustee, pursuant to Court order, for only three and a half months. During that time, his salary was increased at his behest. Ritter had been employed by the Lyntex corporations for over three years in high executive positions. Had these corporations avoided the financial difficulties and their reorganization in bankruptcy, Ritter may have been entitled to claim a generous settlement in severance pay if he were discharged under the circumstances presented here. However, the Trustee and the Court cannot be generous with the assets of the Chapter X estates in this case where it seems probable that upon liquidation, claims of unsecured creditors and investors will not be satisfied.

*Sick Pay*

Ritter invokes Paragraph 4 of his Agreement with Franken Trimming in seeking to collect salary from July 29, 1974 until March 1, 1975. The Employment Agreement provides that if Ritter were unable to perform his services for six consecutive months, Franken might terminate their Agreement on thirty days notice thereafter.

The Employment Agreement, by its very terms, expired on September 1, 1974 and illness continuing thereafter could not extend its operation. Furthermore, as previously noted, the Court's orders of April 15th and May 1, 1974, pursuant to § 191 of the Bankruptcy Act, wholly superseded this Agreement. Ritter claims that the sick pay provision was extended by express oral agreement with the Trustee; the Trustee denies that there was ever such an agreement. Section 191 of the Bankruptcy Act requires that the Court approve, in advance, the rate of compensation of the officers of the debtor corporations. Although the orders of April 15th and May 1st do not set forth in detail the terms of Ritter's employment as fully as an employment agreement might, a term of employment that would provide seven months or longer sick pay benefits was a material term of the rate of compensation that should have received prior approval of the Court, if indeed there had been such an agreement.

In the alternative, Ritter seeks his salary during this period since, he alleges, he had not been notified of his discharge by the Trustee until October 24, 1974. Ritter testified that he first learned of his discharge on October 24, 1974 at a conference with counsel for the Trustee. Ritter further testified that, as late as September 27, 1974, he had a conversation with the Trustee's clerk, and discussed business problems with him.

The Trustee testified and we find, that he first learned on August 9, 1974, that Ritter's absence since July 29, 1974 had been due to a serious heart attack, and that Ritter would require a protracted period of convalescence. The Trustee notified Mrs. Ritter at that time that he would be unable to continue to pay Ritter's salary since Ritter was unable to render services to the Chapter X debtors, and was unlikely to be able to do so in the future. The Trustee also had a telephone conversation with Ritter on August 25, 1974 at which time he told Ritter that he could not continue

salary payments. No additional person was hired to discharge Ritter's responsibilities. Indeed, prior to Ritter's illness it had become apparent that many aspects of corporate activity were winding down.

On September 6, 1974, counsel for Ritter wrote to the Connecticut General Life Insurance Company, which had provided coverage under a group term life insurance policy, seeking clarification of his status as an employee-member of the group in view of the fact that the Trustee had ceased paying him a salary. As is evident from this letter, Ritter's counsel was aware at least by this date of the Trustee's disavowal of any liability for or intention to make future salary payments.

The Court finds that the Trustee notified Ritter in a timely fashion of his inability to continue salary payments if he would be unavailable to provide services for the estates. These facts do not warrant the allowance of compensation for this period.

*Retroactive Pay Increase*

■ Ritter testified that the Trustee had said that he would consider recommending additional compensation if the debtor corporations were rehabilitated successfully and if Ritter provided his services for as long as needed. It now appears rehabilitation has not proven possible, and the proposed plan of reorganization, presently under consideration, would result in the liquidation of the estates. Also, because of his illness, Ritter has not been able to provide his services to the Trustee. Therefore, assuming that the Trustee had promised to consider additional compensation in the event of success, and such promise were otherwise enforcible in the Chapter X proceedings, two expressed conditions precedent have failed to eventuate.

■ Section 191 requires prior Court approval of the rate of compensation. However, the Supreme Court in *Wolf v. Weinstein*, 372 U.S. 633, 648, 83 S.Ct. 969, 979, 10 L.Ed.2d 33 (1963) noted that

"[s]ection 191 does no more than vest the court with additional authority to pass in advance upon the qualifications and the salary of an officer of the Debtor before he assumes or continues in office. There is no suggestion in that section or elsewhere that such approval was intended to diminish in any way the court's statutory powers over fees and allowances conferred broadly by the Chandler Act."

Therefore, despite § 191 of the Bankruptcy Act, Ritter was not precluded from asserting a claim for compensation under § 241 of the Bankruptcy Act, 11 U.S.C. § 641.

Ritter seeks additional compensation for the benefits his services conferred to the estates. Unquestionably, Ritter, during his brief tenure as a Court approved officer, was of service to the Trustee. However, his services did not exceed in value those ordinarily provided by a high level executive officer of a corporation under the circumstances present here, and he has been duly compensated for these services. Considering the efforts expended by Ritter, the results that his efforts produced, and the financial state of the Chapter X estates, no additional compensation is warranted.

Applicant's claims for additional compensation are disallowed.

So ordered.