**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: JAMES L. BOHRER,
<u>Debtor.</u>

NELSON DECKELBAUM, Chapter 11
Trustee of the Estate of James L.
Bohrer,
<u>Plaintiff-Appellee,</u>

v.

No. 97-2286

JAMES L. BOHRER; HILARIE R.
BOHRER; HRB, INCORPORATED;
DUNHILL MANAGEMENT,
INCORPORATED; JAMES L. BOHRER
IRREVOCABLE TRUST,
<u>Defendants-Appellants,</u>

and

UNITED STATES TRUSTEE,
<u>Party in Interest.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Catherine C. Blake, District Judge.
(CA-97-1881-CCB, BK-92-1513-PM, AP-97-1066PM)

Argued: March 4, 1998

Decided: May 8, 1998

Before WILKINSON, Chief Judge, NIEMEYER, Circuit Judge, and
MOON, United States District Judge for the Western District of
Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Dale Andrew Cooter, COOTER, MANGOLD, TOM-
PERT & WAYSON, P.L.L.C., Washington, D.C., for Appellants.
Nelson Deckelbaum, DECKELBAUM, OGENS & FISCHER,
CHARTERED, Washington, D.C., for Appellee. **ON BRIEF:** Morton
A. Faller, MEYER, FALLER, WEISMAN & ROSENBERG, P.C.,
Washington, D.C., for Appellant James L. Bohrer.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Nelson Deckelbaum, Chapter 11 Trustee for the Estate of James L.
Bohrer ("the Trustee"), brought suit against James L. Bohrer ("the
Debtor"); Hilarie R. Bohrer ("Ms. Bohrer"); HRB, Inc. ("HRB");
Dunhill Management, Inc. ("Dunhill"); and the James L. Bohrer Irrev-
ocable Trust ("the Trust"), and sought a preliminary injunction to set
aside the post-Chapter 11 petition transfer by the Debtor of his gen-
eral partnership interest in Sugarloaf Centre Limited Partnership
("Sugarloaf"). The Debtor, Ms. Bohrer, HRB, Dunhill, and the Trust
now appeal the district court's affirmation of the bankruptcy court's
grant of the injunction. We affirm.

In March 1992, the Debtor filed a voluntary petition for bankruptcy
under Chapter 11 of the Bankruptcy Code. The Debtor continued to
manage his property and conduct the business of his estate as a debtor
in possession, pursuant to 11 U.S.C. §§ 1107-08, until the January 27,
1997 appointment of the Trustee. Prior to November 22, 1995, the

2

Debtor held a 5% general partnership interest and an 85% limited partnership interest in Sugarloaf.

Sugarloaf's sole asset is Sugarloaf Centre, a shopping center. Throughout the period when the Debtor was a debtor in possession, the property was encumbered by an $11.75 million first priority deed of trust and a second priority judgment lien in favor of Charles Vaughn ("Vaughn") in the approximate amount of $1 million. Vaughn was also one of the Debtor's creditors. Prior to November 22, 1995, the Debtor's sole partner in Sugarloaf was his estranged wife, Ms. Bohrer, who held the remaining 10% partnership interest as a limited partner.

The Debtor held the right to purchase Ms. Bohrer's interest for $1000 under the terms of an option agreement exercisable at the Debtor's sole discretion. Additionally, pursuant to a power of attorney granted to him by the agreement, the Debtor had complete control over Ms. Bohrer's 10% interest. Finally, pursuant to the agreement, distributions to Ms. Bohrer's interest were limited to $1000 over the lifetime of the partnership.

The most valuable asset listed by the Debtor in his schedule of assets and liabilities filed with the bankruptcy court was his interest in Sugarloaf, which he valued at $9 million. On or about January 30, 1995, several of the Debtor's creditors proposed a Creditor's Plan of Reorganization ("the Plan"). Under the Plan, the Debtor would be ousted and control of his interests in Sugarloaf and his rights under the Option Agreement would vest in a trustee. The proposed trustee would be responsible for operating and managing or, if necessary, selling or refinancing Sugarloaf Centre and making payments to creditors from revenues generated by Sugarloaf. A hearing to consider confirmation of the plan was scheduled for September 18, 1995 and later continued to November 22, 1995.

On August 1, 1995, Peter Yeskel ("Yeskel"), a friend of the Debtor, formed the appellant Trust by an agreement ("Trust Agreement") between Yeskel, as grantor, and the Debtor, as trustee. Under the Trust Agreement, the Debtor was both sole beneficiary and trustee of the Trust. Yeskel funded the Trust with a $200 payment. The same day he formed the Trust, Ms. Bohrer's attorney incorporated the

appellant Dunhill Management. All of Dunhill's stock was issued to the Trust, and the Debtor was named as Dunhill's sole director.

On August 7, the Debtor named himself president, secretary, and treasurer of Dunhill, and Sugarloaf and Dunhill entered into a management agreement ("Management Agreement"). The Debtor signed the Management Agreement on behalf of Sugarloaf as its general partner and signed it on behalf of Dunhill as its president. Under the Management Agreement, Dunhill was to manage Sugarloaf Center until December 31, 2033 in return for a commission of 10% of the gross rents generated by the shopping center. The Management Agreement also contains a poison pill provision entitling Dunhill to approximately $1 million in liquidated damages in the event the agreement was ever terminated by Sugarloaf. In September 1995, in a seemingly unrelated move, Ms. Bohrer's attorneys incorporated appellant HRB, with Ms. Bohrer as the sole shareholder and president and the Debtor as vice president.

The appellants did not give prior notice of these activities to the Debtor's creditors, and they did not obtain the approval of the bankruptcy court. The morning of November 22, 1995, the bankruptcy court orally indicated at a hearing on reorganization that it would confirm the Plan proposed by the creditors, and the Debtor's committee of unsecured creditors ("the Committee"), along with creditors Chevy Chase, F.S.B. and Vaughn, prepared and submitted a proposed order confirming the Plan. Later that afternoon, without notice to the creditors and without the bankruptcy court's authorization, the Debtor purported to withdraw as general partner of Sugarloaf; Ms. Bohrer purported to unilaterally revoke the Option Agreement and assigned to HRB her right under the Sugarloaf partnership agreement to purchase a bankrupt partner's interest; HRB served notice on the Debtor of its intent to exercise this purchase right with respect to his partnership interests; the partners elected to continue Sugarloaf as a limited partnership; Ms. Bohrer's interest in Sugarloaf was divided into a 5% limited partnership interest and a 5% general partnership interest; and Ms. Bohrer transferred to HRB her 5% general partnership interest.

The bankruptcy court learned of these events and, in a memorandum of decision regarding reorganization, found that the Plan was no longer feasible "because of the deliberate pattern of obstruction

4

undertaken on behalf of the debtor and those in concert with him."
J.A. 61. Because of the events of August 1 and 7 and November 22
and diversions of funds made possible by those events, the court on
January 27, 1997 removed the Debtor from control of the estate as
debtor in possession and appointed the Trustee as Chapter 11 trustee,
explaining:

> [The Debtor] has done everything he possibly could to avoid
> his responsibilities as a fiduciary.
>
>  He has entered into a management agreement that is an
> affront and an insult to the Court. There is no business justi-
> fication for it. It is an agreement that was entered into by
> him for a single purpose only, and that is to protect his own
> interest and to further throw a monkey wrench into the reor-
> ganization here.
>
>  The idea of collecting 10 percent commissions for leasing
> or management is an aberration. . . .
>
>  The idea of locking that into the year 2033, and the idea
> of putting what has been termed a poison pill into the mix,
> is . . . a situation that the Court can not countenance . . . .
>
>  I would point out further that it would appear, from
> everything that the Court has seen here, that his wife Hilary
> Rooney Bohrer, is his alter ego, and will follow his guidance
> and do what he says for whatever is in the best interest of
> the Bohrers.
>
>  And, indeed, it was in the best interest of the Bohrers for
> Debtor to cause the transfer of the general partnership inter-
> est in this Estate. A transaction absolutely prohibited by
> Section 549 of the Bankruptcy Code.

J.A. 101-02.

After his appointment, the Trustee filed a complaint seeking,
among other things, avoidance of the transactions outlined above. On

March 7, 1997, the Trustee filed a motion for a temporary restraining order and preliminary injunction ("Injunction Motion") to prevent the appellants from siphoning any further sums of money from Sugarloaf, to force the appellants to transfer back to the estate any property or cash generated as a result of the Debtor's partnership interest in Sugarloaf, and preventing the Debtor and Ms. Bohrer from continuing to use HRB to control Sugarloaf as its purported general partner.

Between the time when the Trustee filed the Injunction Motion and the hearing scheduled for March 26, 1997, the Debtor and Ms. Bohrer formed yet another entity, BRH, L.L.C. ("BRH"). BRH was used to purchase, for $112,000, creditor Vaughn's approximately $1 million judgment secured by the second judgment lien against Sugarloaf's assets. Before the Trustee's appointment, the Debtor had caused Dunhill to pay $65,000 to purchase a judgment held by Darryl Longest against Vaughn and to commence collection actions on the judgment. After the BRH-Vaughn transaction, Dunhill agreed to dismiss, for no other consideration than that which BRH received, the $65,000 Longest judgment.

After a three-day hearing, the court found that the post-petition transactions were breaches of the Debtor's fiduciary duties, that the Debtor's purported withdrawal as Sugarloaf's general partner was a nullity, and that Ms. Bohrer, HRB, Dunhill, BRH, and the Bohrer Trust were all alter egos of the Debtor. The court therefore entered an order granting the injunction, which declared that the Debtor's purported withdrawal as Sugarloaf's general partner was a nullity and that the Debtor's general partnership interest in Sugarloaf is property of his estate. The order also prohibited the appellants from causing Sugarloaf to pay any further sums to themselves and required the Trust, Dunhill, and HRB to turn over all their assets to the Trustee, with the exception of the $200 used to form the Trust. The appellants appealed to the district court, which affirmed the entry of the injunction.

We conclude that the district court correctly decided the issues before it. As this Court noted in Kremen v. Harford Mutual Insurance Co., 958 F.2d 602 (4th Cir. 1992), a debtor-in-possession under Chapter 11 is a fiduciary and should act not in his own interests but rather in the interests of his creditors. Id. at 605 (citing Wolf v. Weinstein,

6

372 U.S. 633, 649-50 (1963); <u>Stein v. United Artists Corp.</u>, 691 F.2d 885, 892 (9th Cir. 1982)). As the bankruptcy court noted, the Debtor "has done everything that he possibly could to avoid his responsibilities as a fiduciary," J.A. 101, and to permit these transfers and the Debtor's withdrawal as general partner would thwart both his fiduciary duties and the public policy rationales which support bankruptcy declarations.

Appellant's argument that the bankruptcy court's decision resulted in a form of involuntary servitude also lacks merit. Although the Thirteenth Amendment prohibits a court from specifically enforcing a personal service contract, <u>Andrews v. Riggs National Bank of Washington, D.C.</u>, 80 F.3d 906, 912 (4th Cir. 1996), the bankruptcy court's preliminary injunction did not compel the Debtor to perform any services for the estate; it simply held that because the right of control is property of the estate, the Debtor could not transfer the right without notice to his creditors. J.A. 793-94.

We further conclude that the appellants' constitutional and public policy arguments lack merit because Ms. Bohrer, HRB, Dunhill, BRH, and the Trust are all alter egos of the Debtor. <u>See</u> J.A. 471.

Accordingly, we affirm on the reasoning of the district court. <u>See</u> J.A. 1131-36.

<u>AFFIRMED</u>

7