**In re MADISON HOTEL CORP., Debtor.**

**Bankruptcy No. 94–80401.**

United States Bankruptcy Court,
N.D. Alabama,
Northern Division.

Nov. 23, 1994.

Vera Smith Hollingsworth and Garland C. Hall, Chenault, Hammond & Hall, Decatur, AL, for debtor Madison Hotel Corp.

Tazewell Shepard, Wilmer & Shepard, Huntsville, AL, for Herman E. Thomason and Michael C. Matsos.

### ORDER

JACK CADDELL, Bankruptcy Judge.

This matter coming before the Court upon the motions of Herman E. Thomason and Michael C. Matsos, individually and on behalf of Executive Park Hotel, Ltd. ("movants"), seeking relief from the automatic stay concerning the Ramada Inn in Huntsville, Alabama under 11 U.S.C. section 362(d), and seeking conversion or dismissal of this case under 11 U.S.C. section 1112; and after notice and a hearing at Huntsville, Alabama on Tuesday, November 15, 1994, and at Decatur, Alabama, Thursday, November 17, 1994, the parties being represented by counsel, the Court makes the following findings of facts.

### FINDINGS OF FACT

The parties have stipulated or established through exhibits offered by movants as evidence that Madison Hotel Corporation ("debtor") entered into a contract with movants to purchase the Ramada Inn on South Memorial Parkway, Huntsville, Alabama, on February 12, 1992. The purchase agreement called for the deed to the hotel property to be held in escrow until the purchase price was paid, and the debtor gave movants a deed to an unrelated parcel of 54 acres in Huntsville, which was also to be held in escrow as partial security for the payment of the purchase price on the hotel. Movants were later persuaded to release the deed to the hotel property, which was recorded, but their deed to the 54 acres was not recorded and is now of questionable value in light of the debtor's bankruptcy and an intervening mortgage. Movants were also assigned an existing first mortgage, security agreement and UCC–1 filing statement on the hotel's real, intangible and chattel property by SouthTrust Bank; the promissory note signed by the debtor corporation and its principals states that this mortgage and security agreement secure the debt to the movants. A second mortgage in the approximate amount of $147,000.00 also encumbers the hotel property and is a first lien against the 54 acres.

The Court finds that when the debtor corporation filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, movants held a secured claim in the approximate amount of $744,557.09 as evidenced by the amended proof of claim on file with the Clerk of this Court and the mortgage and assignment and other exhibits admitted as evidence at the hearing on movants' motions. The Court further finds that under their security agreement and UCC–1 filing statement, movants asserted at the filing and currently possesses a valid, perfected and binding security interest in all of the debtor's property, including all goods, inventory, contract rights, general intangibles, accounts, accounts receivable, documents, instruments, and chattel paper, together with all business and financial records of the debtor.

At the conclusion of the hearing on November 17, 1994, the Court stated various findings of fact for the record. Certain of those findings of fact which are particularly relevant to the movants' pending motions are as follows:

1. The subject hotel property, the Ramada Inn in Huntsville, is in danger of losing its franchise and its related reservation system. The debtor is currently in default both on payments and paper work, and there is no evidence that it has made any effort to cure the defaults since movants' motions were

filed. There is ample evidence that permanent loss of the franchise and the related reservation system would substantially reduce the hotel income and devalue the hotel property.

2. There is undisputed evidence that the debtor has made a structural change to a load-bearing wall in the hotel building without permission of movants as is required by the first mortgage. The Court finds disturbing that this structural change is in violation of two provisions of the Building Code of the City of Huntsville and could result in damage to the foundation of the building.

3. Based upon the testimony of the debtor's president, the Court finds that there have been numerous short term loans between the debtor corporation and various individuals and businesses since the debtor filed its petition for relief. None of these loans were authorized by this Court, and they were not disclosed by the debtor in its schedules or its two Disclosure Statements. The testimony of movants' expert witness, Dick Walker, and that of the debtor's president, William Thompson, also indicate the possibility of preferential payments and/or fraudulent conveyances to various individuals, including the debtor's principals, David Lanier and William Thompson. These principals are conducting activities for the debtor which are not in the ordinary course of business and have withdrawn approximately $285,000.00, including between $60,000.00 and $90,000.00 since the bankruptcy filing.

4. At the date of the hearing, the debtor corporation had failed for three consecutive months to file monthly operating reports as required by a Standing Order of this Court. Again, the debtor made no effort to correct this deficiency after movants' motions were filed, and only belatedly at the hearing on these motions did the debtor's president express an intention to do so. Also, payroll, lodging and liquor taxes have not been paid, and some returns have not been filed.

5. Both the movants' expert witness and the debtor's president testified that the debtor has operated at a net loss during the Chapter 11 case; their estimates of this loss range from $30,000.00 to $85,000.00, and the business has yet to experience the winter months, which in its first Disclosure Statement, the debtor stated are usually its worst months of the year financially. The testimony of one of the movants, Herman E. Thomason, is undisputed that the hotel room market in Huntsville is "soft" and that the competition has driven down occupancy rates. It is also undisputed that the revenue stream of the debtor's business is not sufficient to service the debt, and the mortgage has not been serviced since the bankruptcy filing. Even the debtor's amended plan is not feasible under these circumstances. The principals are either in bankruptcy or under judgments and tax liens themselves and are unlikely to obtain any infusion of new cash. The funding letter produced by the debtor's president at the hearing is vague and does not constitute a commitment.

6. Considerations by a Bankruptcy Court of a motion for stay relief against secured property necessarily involves valuation of the property to determine where there exists an equity cushion which provide adequate protection to the secured creditor. In this case, one of the former owners, Mr. Thomason, testified that in his opinion the facility is worth approximately $800,000.00. Mr. Thomason established his background and experience of owning and operating hotels. By contrast, the debtor's president estimated the value of the hotel at around $1,100,000.00. William Thompson admitted in his testimony that he had no previous experience in the hotel business, and he had little explanation for his opinion of value. Therefore, the Court hereby finds that the value of the hotel property, including the chattels and intangibles located thereon, is $800,000.00. The Court further notes that the unpaid 1994 ad valorem taxes in the approximate amount of $25,000.00 represent a potential priority lien on the property under state law, further reducing the meager post-petition equity in the property for the first mortgage holders, and leaving the second mortgage partly, if not entirely unsecured.

## CONCLUSIONS OF LAW

Based on the foregoing findings of fact, the Court hereby makes the following conclusions of law:

■ 1. Although Congress singled out lack of adequate protection as sufficient cause for modification of the automatic stay, it also made clear that cause under Section 362(d)(1) was not limited to lack of adequate protection. H.Rept. No. 95–595, U.S.Code Cong. & Admin.News 1978, p. 5787 to accompany H.R. 8200, 95th Cong., 1st Sess. 343 (1977), U.S.Code Cong. & Admin.News 1978, 6299–6300. Debtor misconduct can constitute cause under § 362(d)(1). *In re Quinlan,* 12 B.R. 516 (Bankr.W.D.Wisc.1981); *In re Family Investments, Inc.,* 8 B.R. 572 (Bankr. W.D.Ky.1981); *In re White,* 8 B.R. 247 (Bankr.C.D.Cal.1981).

■ 2. The concept of the debtor-in-possession as a fiduciary of the estate, the creditors and the Court, stems from its assumption of the rights and powers of a trustee and extends to a corporation's officer, director, shareholder or managing employee. *See Wolf v. Weinstein,* 372 U.S. 633, 649–53, 83 S.Ct. 969, 979–81, 10 L.Ed.2d 33 (1963); *Mosser v. Darrow,* 341 U.S. 267, 270, 71 S.Ct. 680, 681–82, 95 L.Ed. 927 (1951); *Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 245–46, 84 L.Ed. 281 (1939); *In re Martin Custom Made Tires Corp.,* 108 F.2d 172, 173 (2d Cir.1939). Accord *In re Grinstead,* 75 B.R. 2, 3 (Bankr.D.Minn.1985) (plan confirmation terminates debtor-in-possession status, the estate and the former's obligation to act as a fiduciary of the latter). As a fiduciary, the debtor is obligated to protect and conserve property in its possession, as well as to provide voluntary and honest disclosure of financial information—a reasonable *"quid pro quo"* for its temporary relief from substantial financial obligations. *See In re Photo Promotion Ass., Inc.,* 72 B.R. 606, 611 (Bankr.S.D.N.Y.1987), *citing to Devers v. Bank of Sheridian, Montana (In re Devers),* 759 F.2d 751, 754 (9th Cir.1985) and *Northwestern National Bank of St. Paul v. Halux, Inc. (In re Halux, Inc.),* 665 F.2d 213, 216 (8th Cir.1981); *Travelers Insurance Co. v. Plaza Family Partnership (In re Plaza Family Partnership),* 95 B.R. 166, 172 (E.D.Cal.1989); *In re Valley Park Group, Inc.,* 96 B.R. 16, 23 (Bankr.N.D.N.Y.1989); *Paccar Financial Corp. v. Papas (In re Pappas),* 17 B.R. 662, 667 (Bankr.D.Mass.1982).

■ 3. The insider status of the principals of a debtor corporation subjects all of their transactions with the debtor to a greater scrutiny than "arms length" transactions. *See In re Athos Steel and Aluminum, Inc.,* 69 B.R. 515, 521 (Bankr.E.D.Pa.1987) *cited in In re Crouse Group, Inc.,* 75 B.R. 553, 557–58 (Bankr.E.D.Pa.1987) (*quoting Wolf v. Weinstein, supra,* 372 U.S. at 649, 83 S.Ct. at 979). *See, e.g.,* Code § 547(b)(4)(B); *Levy v. Runnells (In re Landbank Equit Corp.),* 83 B.R. 362 (E.D.VA.1987); *Chittenden Trust Co. v. Sebert Lumber Co., Inc. (In re Vermont Toy Works, Inc.),* 82 B.R. 258 (Bankr. D.Vt.(1987).

■ 4. The appointment of an independent Chapter 11 trustee is appropriate when serious questions arise about the propriety of a debtor's post-petition financial transactions. Moreover, "a Chapter 11 trustee will be in a good position to determine whether or not the debtor can be reorganized and along which lines such reorganization or liquidation should proceed." *In re Cohoes Indus. Terminal, Inc.,* 65 B.R. 918, 923 (Bankr.S.D.N.Y. 1986); *In re E. Paul Kovacs and Company, Inc.,* 16 B.R. 203 (Bankr.D.Conn.1981). *See also In re Philadelphia Athletic Club, Inc.,* 15 B.R. 60 (Bankr.E.D.Pa.1981).

■ 5. In connection with a motion for relief from the automatic stay under Section 362(d)(2), the creditor has the burden of proving that the debtor lacks equity in the property while the debtor has the burden of proving that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g); *see United Sav. Ass'n v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). In order to satisfy this requirement, the debtor must show that there is "a reasonable possibility of a successful reorganization within a reasonable time." *Timbers,* 484 U.S. at 376, 108 S.Ct. at 633 (citation omitted). Thus, a creditor is entitled to "relief from the automatic stay if there is no reasonable likelihood of reorganization due to creditor dissent or feasibility considerations." 2 *Collier on Bankruptcy* § 362.07 at 362–62.

### ORDERS FOR RELIEF

■ In conformity with the foregoing findings of fact and conclusions of law, and upon

due consideration of all matters set out in the court file and in the evidence submitted by the parties, by the Court it is

ORDERED, ADJUDGED and DE-CREED that the automatic stay is hereby modified to allow movants to enforce their security agreement and foreclose their mortgage against the chattel, intangible and real property of the Huntsville Ramada Inn for the purpose of paying their claim from the liquidation of such collateral without further notice or hearing on this matter unless so ordered by the Court; and it is further

ORDERED, ADJUDGED and DE-CREED that movants may file an amended proof of claim for the unsecured deficiency, if any, after liquidation of their collateral; and it is further

ORDERED, ADJUDGED and DE-CREED that a separate Order will be entered appointing a Chapter 11 trustee to take possession and safeguard the property of the Huntsville Ramada Inn pending liquidation by movants and to perform such other duties in the case as may be authorized by this Court or by the Bankruptcy Code.

DONE and ORDERED.