**In re REMINGTON FOREST, a South Carolina partnership, Debtor.**

**Bankruptcy No. 95–76069.**

United States Bankruptcy Court, D. South Carolina.

Dec. 28, 1995.

Charles S. Altman, Charleston, SC, for Debtor.

R. Geoffrey Levy, Columbia, SC, for Summatyme Corporation.

## ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon the Motion of Summatyme Corporation, a N.C. corporation, ("Summatyme"), for an Order modifying the 11 U.S.C. § 362[1] stay in this case to allow the completion of the foreclosure proceeding before the Master–in–Equity for Charleston County, and to allow the entry of Judgment of foreclosure and sale of the Debtor's real property. With the consent of the parties, this Court previously granted a limited modification of the automatic stay so as to allow the Master–in–Equity to complete his findings and issue a Decree of Foreclosure and Sale or other Order up to the point before a sale may take place. The issue presently before the Court is whether this Court should also grant further and complete relief from the automatic stay as to this real property. After consideration of the pleadings before the Court and the evidence presented at the hearing held on December 7, 1995, this Court makes the following Findings of Fact and Conclusions of Law:

1. Further references to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, shall be by section number

## FINDINGS OF FACT

1. On November 1, 1995 (the "Petition Date"), Remington Forest, a S.C. Partnership ("Remington Forest"), commenced the above-captioned case under Chapter 11 of the United States Bankruptcy Code and has remained a debtor in possession pursuant to §§ 1107 and 1108.

2. Remington Forest is a South Carolina partnership which was formed in 1984, and has its principal place of business in Mount Pleasant, South Carolina.

3. Remington Forest's primary asset is the real property, improvements and personal property which comprise 62 units of a horizontal property regime known as Remington Forest Condominium Complex (the "Complex") located in Mount Pleasant, South Carolina.

4. The two equal partners of Remington Forest are Mulherin–Howell, a S.C. partnership, and Real Venture Partnership.

5. Summatyme Corporation is a North Carolina corporation. Summatyme is the Debtor's sole secured creditor and the holder of 62 separate notes (the "Notes") which are all secured by 62 mortgages on the Complex.

6. For purposes of this § 362 Motion, the stipulated debt due Summatyme as of December 7, 1995 is $3,569,414.91, exclusive of accrued attorneys' fees and costs.

7. The Complex has historically been rented as apartments which provides the only income for the Debtor.

8. The Debtor's Schedules filed on November 1, 1995 listed only four creditors: Summatyme Corporation, All American Pest Control, Atkinson Pool Company and Corporate Center, a SC Partnership. There has been no amendment to the Schedules.

9. The debts listed to All American Pest Control and Atkinson Pool Company for services rendered in August of 1995 only.

have been paid by the Debtor or the manager of the Complex in the ordinary course of business.

10. Corporate Center, a SC Partnership is a creditor which is controlled by Allen Howell, a controlling partner in the partnerships which comprise the Debtor.

11. At the hearing on December 7, 1995, the Debtor filed its Disclosure Statement and Plan of Reorganization (the "Plan").[2]

12. The Plan proposes three alternative treatments for Summatyme; (a) sale of the entire property; (b) sale of the 62 units separately; and (c) long term financing by Summatyme. The Plan does not identify any other actual creditors of the Debtor and indicates that all indebtedness other than that to Summatyme is current.

### CONCLUSIONS OF LAW

The automatic stay may be modified pursuant to Section 362(d)(1) for cause or (d)(2) if the debtor does not have an equity in such property and such property is not necessary to an effective reorganization.

Pursuant to § 362(d)(2)(A), as to the issue of equity, in the recent Fourth Circuit case of *Estate Construction Company v. Miller & Smith Holding Company, Inc.,* 14 F.3d 213 (4th Cir.1994), the Court states:

To determine if there is equity in the property, the bankruptcy court must determine the following: (1) the value of the real estate, and (2) the amount of debt encumbering the property. If the debt is greater than or equal to the value of the realty, the stay may be properly lifted.

14 F.3d at 219. In order to determine the value of the collateral, the initial burden of proof is upon the movant, Summatyme. *See* 11 U.S.C. § 362(g) ("In any hearing under subsection (d) or (e) of this section concerning relief from the stay of any act under subsection (a) of this section—(1) the party requesting such relief has the burden of proof on the issue of the debtor's equity in property; and (2) the party opposing such

relief has the burden of proof on all other issues.").

Summatyme's appraiser, Herbert Sass, testified that the present "as is" value of the Complex if sold as a whole to a third party is $2,700,000.00. This represents an increase over the appraised value in Sass' December, 1994 written appraisal, which reflected a value of $2,420,000.00. Sass also testified that alternatively a 21–month sellout of the individual units within the Complex would indicate a present value of $2,670,000.00. As a basis for that valuation, Sass opined that the present value of the 2–bedroom units and the 3–bedroom units within the Complex are $57,000.00 and $61,000.00 respectively and that such present values would need to be discounted to take into account sales over an extended period of either 21 or 31 months.

The Debtor's appraiser, Mike Robinson, testified that he had no opinion on either the present "as is" value of the entire project if sold to one buyer or the present "sellout" value of the individual units sold over any period of time. Robinson did testify to three appraisals of individual units which stated a present retail value for one 2–bedroom unit of $60,000.00 and for two 3–bedroom units of $68,000.00 and $68,500.00. The Debtor's realtor, Bill Smith, also testified that he believed the 62 units could individually be sold by his company within a 31 month period at an average rate of two units per month. (The record indicates that there are ten 2–bedroom units and fifty-two 3–bedroom units in the Complex.) Smith further testified that there was a contract on one of the 3–bedroom units which was signed on the day of the hearing for $69,500.00. Smith also testified that the newly signed contract required at least $2,300.00 in repairs to the unit and after taking into consideration the six (6%) percent commission of $4,170.00 to be charged on such a sale, that the sale of that 3–bedroom unit would provide an approximate net value of $63,000.00. The Debtor offered no other evidence on the value of the Complex, but its Certification of Facts asserts a fair market value of $4,000,000.00.

2. The Plan was introduced into evidence as an exhibit to the Debtor's Objection to Summa-

tyme's Motion for Relief from Stay.

In order to determine the value and therefore equity in the Complex, the Court has examined the evidence presented by both appraisers Sass and Robinson and finds that the testimony presented by Sass is more complete and credible.

The Court finds that the present value of the Complex as a single asset is $2,700,000.00 and that the value of the sale of the individual units over a 21–month period would be $2,670,000.00 and over a 31–month period would be $3,175,956.00.[3] Under either valuation, it appears that the Debtor has no equity in the Complex property.

The second inquiry for the Court under § 362(d)(2) is whether the subject property is necessary for an effective reorganization. The Fourth Circuit has summarized the standard for relief under § 362(d)(2) by stating that,

> A creditor seeking relief from the automatic stay provisions in § 362 may obtain an order from the bankruptcy court allowing it to proceed against property if '(A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization.' 11 U.S.C. § 362(d)(2). The Supreme court has construed the second requirement as 'a reasonable possibility of successful reorganization within a reasonable time.' *United Savs. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.,* 484 U.S. 365, 376 [108 S.Ct. 626, 633, 98 L.Ed.2d 740] (1988).

*In re Ursula Patestas,* No. 93–1639, slip op. at 3, 1995 WL 10325 (4th Cir. Jan. 12, 1995) (Unpublished).[4] *See In re Coates,* 180 B.R. 110 (Bkrtcy.D.S.C.1995).

In order to determine if this Debtor has a reasonable possibility of successful reorganization within a reasonable period of time, the Court must examine the Debtor's Plan and its confirmability.

Besides Summatyme, whose debt represents more than 99% of the indebtedness listed on the Schedules, the Debtor lists only three other creditors in its Schedules, Plan and Disclosure Statement. Two of these creditors, if owed on the date of the Petition, are no longer owed the nominal amounts of money listed by the Debtor. Specifically, Naomi Simpson, an employee of the management company which operates the Complex for the Debtor, (and in which Allen Howell also has an ownership interest), testified concerning the October, 1995 income statement for Remington Forest that the two debts ($125.00 for pest control and $335.00 for pool maintenance) were paid. The third creditor, Corporate Center, S.C. Ptr., is an insider creditor, as Allen Howell is a controlling principal of both it and the Debtor.

Based on the Debtor's Schedules, Disclosure Statement and the testimony at the hearing, it is evident that there exists no truly impaired class of claims in this case that would vote to accept any Plan put forth by the Debtor and therefore such a Plan is unconfirmable. The only means by which the Debtor has to obtain an accepting impaired class is to artificially impair or create a class of claims or to use a separate classification of similar claims to secure the vote of an accepting impaired class of claims under § 1129(a)(10). The Fourth Circuit Court of Appeals, as well as the Bankruptcy Court in this district, have rejected such attempts by debtors to obtain confirmation of a plan by manipulation of the chapter 11 process as a violation of the § 1129(a) requirements, including a lack of good faith. *See In re Bryson Properties, XVIII,* 961 F.2d 496, 503 (4th Cir.1992), *cert. denied,* 506 U.S. 866, 113 S.Ct. 191, 121 L.Ed.2d 134 (1992); *In re W.C. Peeler Co., Inc.,* 182 B.R. 435 (Bankr.D.S.C. 1995) (Bishop, J.) and this Court's opinion dated September 20, 1995 in the case of *In re*

---

**3.** The Sass opinion of $2,670,000.00 was based on a 21–month sellout period but did not include debt service of approximately $699 per day on the principal balance of $3,131,000.00. The Sass opinion also made a deduction for profit and an on site sales office, the need for which the Debtor disputed. Even if the Court gives the benefit of any doubt to the Debtor in increasing the value by these amounts plus increasing the discount rate in considering a 31 month rather than 21 month sellout period, the Court concludes the value over a 31 month sellout period would be $3,175,956.00.

**4.** Unpublished opinions are not binding precedent in this circuit but may be persuasive. See I.O.P. 36.5 and 36.6.

*Dunes Hotel Associates,* 188 B.R. 174 (Bkrtcy.D.S.C.1995).

This Court concludes that the Debtor has failed to meet its burden of proof of showing that the Complex property is necessary to an effective reorganization in so far as it appears that there is no reasonable possibility of the Debtor confirming a Plan of Reorganization without the consent of Summatyme Corporation, which has indicated its opposition to the Debtor's reorganization efforts. *In re Swedeland Development Group, Inc.,* 16 F.3d 552 (3rd Cir.1994), *In re Cho,* 164 B.R. 730 (Bkrtcy.E.D.Va.1994), *In re Madison Hotel Corp.,* 175 B.R. 94 (Bkrtcy. N.D.Ala.1994). Based thereon, the Court concludes that Summatyme Corporation is entitled to relief from stay pursuant to § 362(a)(2).[5]

Pursuant to all of the foregoing Findings of Fact and Conclusions of Law, it is therefore

**ORDERED,** that the Motion of Summatyme Corporation for Relief from the 11 U.S.C. § 362 Automatic Stay is granted.

**AND IT IS SO ORDERED.**

---

5. The Court need not reach a conclusion regarding the motion for relief from the stay for cause pursuant to § 362(d)(1) at this time and therefore reserves ruling thereon.